Syllabus.

## PATRICK J. SEXTON

### v.

## THE CITY OF CHICAGO.

*Filed at Ottawa June 16, 1883—Rehearing denied September Term, 1883.*

1. PRACTICE—*trial by the court—degree of evidence required, to sup-port a proposition of law.* In the case of a trial by the court without a jury, if there is evidence in the record tending to establish the hypothetical case made by a proposition of law based thereon, the court should give the same, if otherwise unobjectionable. It is not necessary there should be a prepon-derance of evidence to warrant the making of such proposition.

2. BUILDING CONTRACT—*reference to plans and specifications—how far controlling the rights of the parties.* A city had, prior to letting con-tracts for furnishing materials and doing work on a proposed city hall, through its architect and draughtsman, prepared a general plan of the build-ing, consisting of numerous drawings and specifications, showing, in dis-tinct views or subordinate plans, the different parts of the building, and the different kinds of work and material required, and the manner in which the same was to be done, and also, with a view of facilitating bidding on the dif-ferent parts of the work, and for the purpose of furnishing each contractor after the work was let with a distinct plan relating mainly to his own work, caused a number of copies or duplicates of the subordinate plans of the work to be prepared, some of them showing the stone work, and others the iron work, and so on, and advertised for bids for the several parts of the work. From the copies or duplicates shown him on file, a contractor bid on the iron work, which bid was accepted, and a formal contract was entered into between him and the city, in which the city reserved the right to forfeit the contract, or any part of it, for any breach or default on the part of the contractor in its performance, and furnished him the same plans and specifications to be used by him in doing the work: *Held*, in an action by the contractor to recover upon a *quantum meruit*, that the reference in the contract to the plans and specifications was to be understood as meaning those upon which the plaintiff made his estimate and which were so furnished to him, and that the city had no right to declare his contract forfeited for his refusal to do work not shown on such plans and specifications, or furnish materials differ-ent from those therein shown, although the architect of the city may have omitted to copy therein some changes made in the originals, and that the plaintiff was entitled to recover.

3. If there are differences in the several sets of plans furnished by the owner as a guide for the estimates of work proposed to be let, and a bidder uses the set furnished him by the agents of the owner for making his esti-

mates and bid, and a difference between him and the owner arises as to the amount and quality of the work let, he having made his bid on the plans submitted to him, which was accepted, and was made the basis of the contract, the words "plans," "diagrams" and "drawings" in the contract entered into upon such bid will be held to refer to the plans, etc., so furnished to him by the owner, and if such plans, etc., differ from the originals, it will be the fault of the owner or his agent, and advantage of such difference can not be taken, to the prejudice of the contractor.

4. SAME—*deficiency in specifications—how far it will exonerate the contractor from doing certain portions of the work.* Where a contract to furnish the materials for the iron work of a building, and do the work necessary, refers to plans and specifications which show only openings for sky-lights, giving no sizes, weights or data to guide in their construction, so that the contractor can not make them without additional plans and specifications, the construction of such sky-lights can not be held to have been included in the letting and contract, and the contractor may well refuse to make the same.

5. ACTION—*right to recover on quantum meruit.* In such case, whether the party letting the work is estopped from denying the correctness of the plans so furnished, and therefore had no right to declare a forfeiture of the contract, or whether, by reason of the mutual mistake caused by the negligence in not furnishing correct copies of the plans, etc., no contract was created, is unimportant to decide, as in either case the contractor is entitled to recover on a *quantum meruit* for the materials furnished and his labor. The contractor has a right to acquiesce in the forfeiture and recover the value of his services and materials.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.

Mr. LEONARD SWETT, and Mr. JOHN N. JEWETT, for the appellant:

The reference in the contract to "the plans, diagrams and specifications" made and prepared for the work, refers to those furnished the plaintiff, and upon which he made his bid. He had a right to take them as duplicates of those on file.

Upon a breach by one of the parties to a special contract, the opposite party may recover for labor performed under it upon a *quantum meruit*. *Huntly* v. *Butts*, 1 Scam. 410; *Her-*

*rington* v. *Hubbard,* id. 569; *Read et al.* v. *Phillips et al.* 4 id. 42; *Bannister* v. *Read,* 1 Gilm. 98; *Selby* v. *Hutchinson,* 4 id. 319; *Webster* v. *Enfield,* 5 id. 299; *Wilson* v. *Bauman et al.* 80 Ill. 494; *Schillo* v. *McEwen,* 90 id. 79.

The city having furnished to Sexton a tracing from the original plan in the office, showing the dimensions and weight of the iron rafters, as a plan for him to bid upon, and afterwards having given him said tracing as a plan to do the work by, if Sexton relied upon it as a true copy of the original plan, and did not know to the contrary until he had completed all the work he did, the city is estopped from proving that the original plan on file in the office is different from the tracing furnished Sexton to bid on and do the work by.     2 Smith's Leading Cases, 711; *Pickard* v. *Sears,* 6 A. & E. 475; *Hicks et al.* v. *Crams et al.* 17 Vt. 455; *Howes* v. *Spicer,* 23 id. 509; *Davis* v. *Bradley,* 24 id. 54; *Roe* v. *Jerome,* 18 Conn. 138; *Bushnell* v. *Church,* 15 id. 419.

Mr. FRANCIS ADAMS, and Mr. F. S. WINSTON, Jr., for the appellee:

It is the original plan, and not a tracing, to which the contract refers, and which must be consulted in every case of difference or dispute between the parties.    Such a copy is not the original, and can not even be used as evidence when the original can be produced.    *King et al.* v. *Worthington et al.* 73 Ill. 161; *Nodin* v. *Murray,* 3 Campb. 228; *Chapin* v. *Siger,* 4 McLean, 378; *Marsh* v. *Hand,* 35 Md. 123; *Merritt* v. *Wright,* 19 La. Ann. 91; *Foot* v. *Bentley,* 44 N. Y. 166; *Goodrich* v. *Weston,* 102 Mass. 362.

The city is not estopped to deny the correctness of the tracing, for there is no element of willfulness or fraud shown, which is necessary before an estoppel arises.    *Davidson* v. *Young,* 38 Ill. 152; *People* v. *Brown et al.* 67 id. 435; *Tyler* v. *Bailey,* 71 id. 34.

Upon the point that appellant, if misled by the tracing, was so misled by his own negligence in not examining the original plan, he having had an opportunity so to do, and that in such case there is no estoppel, see *Strong* v. *Livingstone,* 8 Bradw. 436; *Swannell* v. *Watson,* 71 Ill. 456; *Mead* v. *Munson,* 60 id. 49.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This was an action of *indebitatus assumpsit,* brought by Patrick J. Sexton, the appellant, in the Superior Court of Cook county, against the city of Chicago, the appellee, to recover a balance claimed to be due for work done and materials furnished by him, and used and appropriated by the city in the construction of the iron work for the new city hall. To the declaration the city filed the plea of *non assumpsit,* and the cause, by agreement of parties, was submitted to the court without the intervention of a jury, resulting in a finding and judgment for the defendant. On appeal to the Appellate Court for the First District the judgment of the Superior Court was affirmed, and Sexton thereupon appealed to this court.

Notwithstanding the voluminous record before us, the real controversy in the case is confined to very narrow limits. As claimed by appellee, we have nothing to do with the controverted questions of fact raised by the pleadings or evidence in the case. They have all been settled adversely to the appellant, and we have no power or disposition to review them. While this is so, it is nevertheless the duty of this court to examine the evidence bearing upon the issues of fact thus determined, to see what principles of law were involved in the controversy, and whether they were properly applied by the trial court.

On the trial of this cause the court refused to hold certain propositions of law, which we think were appropriate to

the facts in the case, and that in doing so there was error, for which the Appellate Court should have reversed the judgment.    The refused propositions are as follows:

"6.    If, in consequence of differences between the several sets of plans furnished by the city as a guide for estimates of the work then proposed to be let, and in consequence of the use by Sexton of one set of such plans so furnished to him for making his estimates, differences naturally arose between Sexton and the city as to the amount of work then to be let, and Sexton's bid, made upon the plans submitted to him, was accepted by the city, and was made the foundation of the contract between the city and Sexton, which has been offered in evidence, then the words 'plans,' 'diagrams' and 'drawings,' mentioned in the contract, should, as between Sexton and the city, be held to refer to the plans, etc., furnished by the city, upon which Sexton based his estimates and his bid, the differences in the sets of plans were the fault of the city or its officials, and the city can not take advantage of its own wrong, to the prejudice of Sexton.

"7.    If the differences of understanding as to the amount of work to be done resulted from the cause and in the manner suggested in the last preceding proposition, then either the contract must be construed in accordance with the plans, etc., furnished to Sexton, and upon which he based his bid, or there was, as a matter of law, no contract between Sexton and the city, notwithstanding the signing of the paper purporting to be such contract; and in the latter case Sexton is entitled, in the present action, to recover the fair value of the work done and materials furnished by him, and which have been accepted by the city, upon the basis of a *quantum meruit.*"

In order to fully understand these propositions and their legal relation to the case in hand, it will be necessary to examine to some extent the evidence, bearing in mind the

chief object in adverting to the testimony at all is to ascertain whether there is evidence in the record tending to establish the hypothetical case made by the propositions. We say "*tending to establish,*" for, as is well understood, it is not necessary there should be a preponderance of evidence to warrant the giving of such propositions, if otherwise unobjectionable. Our consideration of the evidence then being for the purposes stated, it will only be necessary to refer to such parts of it as, in our judgment, tend to establish the hypothesis in question.

It appears from the record that prior to the 30th of March, 1878, the city of Chicago, with the view of building a new city hall, had, by its architect and the draughtsmen under him, prepared a general plan of the building, which ·consisted of numerous drawings and specifications, showing, in distinct views or subordinate plans, the different parts of the building, and the different kinds of work and material required in its construction, and the manner in which the same was to be done. These distinct views or subplans were also divided into sections, which were numbered in numerical order. The city had, also, prior to the date last above mentioned, with the view of facilitating bidding on the different parts of the work, and, as we understand it, for the purpose of furnishing each contractor after the work was let ·with a distinct plan relating mainly to his own work, caused a number of partial copies or duplicates of these subordinate plans of the work to be prepared, some of them showing the. stone work, others the iron work, and so on, and also so much ·of the general plan as was necessary to show the relation of. the specific work to it, and that they, together with the general or original plan, were on file in the office of the department of public works belonging to the city, prior to and at the time the city advertised for the letting of the work in controversy. On the day last mentioned, to-wit, on the 30th of March, 1878, the city advertised for bids on the stone, brick

and iron work of the building. The appellant, being a contractor by profession, and desirous of bidding on the iron work, applied at the proper office of the city and was furnished by the party then in charge of the office with one of the above mentioned duplicate plans of the iron work, for the express purpose of enabling him to make his estimates with a view of bidding on the work. Having made his estimates from the plan thus furnished him by the city, on the 8th of the following month he made a formal bid, by which he offered to furnish the materials and do the iron work, according to plans and specifications, for the sum of $105,302.69, which was accepted by the city, and, on the 17th of the same month, a formal contract to that effect was drawn up and mutually executed by the parties, in which the city reserved the right to forfeit the contract, or any part of it, for any breach or default on the part of appellant in its performance. On thus letting the iron work to appellant, the city, in conformity with the general custom to that effect, furnished him with the same plan and specifications of the work which had been previously given to him to make his estimates by, to be used by him in doing the work under the contract. Under these circumstances he commenced and proceeded with the work to the entire satisfaction of the city, so far as the record shows, until he came to construct the roof, when the city, on the 22d of December, 1880, declared his contract forfeited, on two grounds: First, because appellant refused to furnish "T" iron rafters for the roof weighing from ten and one-fourth to thirteen and one-half pounds per lineal foot; and second, because he declined to furnish the materials and construct the superstructure of the sky-lights. The appellant then and now insists that a proper construction of his contract with the city did not and does not require him to comply with either of these demands, which were made the occasion of declaring a forfeiture of it.

The plans and specifications under which the work was let, having, by reference, been made a part of the contract itself, it becomes a question of law whether the exactions of the city were well founded or not. · The entire work was to be done according to said plans and specifications, and upon turning to them, so far as they relate to sky-lights, we find they show the openings and iron frame work constituting the foundation for five sky-lights. We also discover certain lines passing across the openings, which indicate that sky-light superstructures of some kind were ultimately intended for the building, but no sizes, weights or other data are given to guide one, either in their construction or in estimating their cost, except the size of the openings. Had the appellant been forced to construct sky-lights, under the circumstances he would have been compelled to have either gotten up an additional plan and specifications for his employés to work by, or the city would have had to furnish them,—in neither of which cases would they have been constructed according to the plans and specifications on file in appellee's office at the time the contract was entered into; and this, we think, conclusively shows the sky-lights were not embraced within the contract.

Moreover, it further appears that appellant, before putting in his bid for the work, called the attention of Mr. Jordan, to whom he had been referred by Cleveland, the city architect, to the fact, that while the plans and specifications did not give any data from which the character or cost of the superstructure of the sky-lights could be ascertained or inferred, yet the printed forms required by the city to be used in bidding for the work called for sky-lights; that upon having his attention thus called to the apparent repugnance between the form of the bid and the plans and specifications, Mr. Jordan told appellant, in substance, that the plans for the sky-lights were not then ready; that no sizes were marked on the plans then furnished, and consequently he should not

figure on them; that he was simply required to include in his bid what the city then asked him to do,—namely, that which was then specified and shown by the plans. Jordan at this time was in the employment of the city as draughts-man under Mr. Cleveland, the city architect, and in the latter's absence the business of the office was under his supervision. Under these circumstances appellant, in making his estimates, allowed nothing for the superstructure of sky-lights, and the city clearly had no right to require him to make them, and his refusal to do so afforded no grounds for declaring a forfeiture of the contract.

The other ground for declaring a forfeiture of the contract is, in our judgment, equally untenable. The plan and specifications furnished appellant by the city, both for the purpose of making his estimates preparatory to bidding for the work, and of guiding him in its performance after the same was let to him, did not require him to furnish "T" iron rafters of the weight demanded by the city, but on the contrary required "T" iron rafters three and a half by four inches, weighing seven pounds per lineal foot, and no more. This is not denied, but it is urged that the plan furnished appellant by the city for the purposes above stated was but a copy, commonly called a "*tracing,*" and that it is not a true copy of the original or general plan from which all the other plans or tracings are taken, and that there being a discrepancy between the two, appellant must be held to have contracted to do the work according to the original plans, and not according to the real plans actually furnished him by the city to enable him to estimate the cost of the work and guide him in the performance of it under the contract. However plausible this theory may appear to be, by reason of its supposed analogy to certain general principles of law, which, for many purposes, distinguish original documents from mere copies, we do not regard it as either sound or just in its application to the facts in this case. The tracing copy, as

it is called, furnished the appellant in this case, was, at the time it was made, an exact copy of the original, so called, or at least the evidence tends to establish that fact. It was subsequently thought and determined by the city authorities that the "T" iron for the rafters was too light, and the original plan was changed by making it call for "T" iron weighing ten and one-quarter to thirteen and one-half pounds to the lineal foot, instead of seven, as required by it when first made. This change was made by Mr. Jordan under the supervision of the city architect, and, as he testifies himself, through inadvertence or neglect he failed to make the corresponding correction in the tracing copies, which, as we have seen, were made expressly for the use of contractors and bidders. Thus it will be perceived the city is wholly responsible for the mistake out of which this entire controversy has arisen,—a mistake which makes a difference in the cost of the building of some $8000 or $10,000,—and yet the city seeks to fasten this whole loss on the appellant, who was in no sense to blame for it, but on the contrary it is the direct result of the city's own negligence.

We do not understand the expression "plans and specifications," and other terms of like import, as used in the contract, have exclusive reference to the general plan from which the duplicate plans or "tracings" are made out. The latter, although for convenience are generally called "tracings," are nevertheless as clearly plans, within the meaning of the contract, to the extent of the work represented by them, as the original from which they are taken, and we think justice, honesty and fair dealing demand they should be so treated in giving a construction to the contract. As already seen, they were given by the city to appellant to make his estimates and do the work by, and he had a right to assume these were the plans referred to in the contract. And if, through the city's negligence, a mistake occurred in making them out, the city must suffer the consequences.

To the suggestion appellant might have verified the plans given him by the general or original plan, we perceive no force in it. Those furnished him by the city were made especially for the use of contractors in making their estimates and doing the work by, and he had a right to assume they were correct, as he did.

Whether the city, under the circumstances, was estopped from denying the correctness of the plans thus furnished appellant, and for that reason had no right to declare a forfeiture of the contract, or whether, by reason of a mutual mistake, caused by the negligence of the city, as to the subject matter of the contract, no contract was created between them, it is not important to inquire, as in either case the law is with the appellant, and he therefore had the right to acquiesce in the forfeiture of the contract, and proceed, as he did, upon a *quantum meruit* for the materials and his services. Bishop on Contracts, secs. 186, 228, *et seq.; Continental Bank* v. *Bank of Commonwealth,* 5 N. Y. 575.

As already stated, we think the sixth and seventh propositions tendered to the court by appellant should have been held as the law of the case, and it is no answer to say, that as it will be presumed that all conclusions of fact were settled adversely to appellant, the judgment of the court was right, notwithstanding the error in refusing the propositions tendered, because it is clear the trial court, by reason of entertaining an erroneous view of the law, as shown by its refusal to give the propositions in question, must have treated as irrelevant some of the evidence which we regard as material, and in this way it doubtless reached an improper conclusion.

For the errors indicated the judgment of the Appellate Court is reversed and the cause remanded, with directions to reverse the judgment of the Superior Court, and remand the cause for further proceedings in conformity with the views above expressed.

*Judgment reversed.*