### THE COUNTY OF COOK

*v.*

### HENRY HARMS.

*Filed at Ottawa November 20, 1883.*

1. BUILDING CONTRACT—*when it ceases to govern, by material departures in its execution.* A contract for furnishing all materials, and constructing a foundation for a court house according to certain plans and specifications, upon which bids were based, provided that any work, changes, additions or alterations ordered should not invalidate the contract, but that they should be paid for as extra work, or deducted from the original amount, as the case might be, such extras or deductions to be subject to the valuation of the architect, whose decision was to be final: *Held,* that if the work, etc., ordered, was materially variant from the plans and specifications, it would be a different work not within the contemplation of the parties when the contract was made, and that where more than mere changes, additions and alterations were required, the contractor was not bound to accept such compensation for his labor, etc., as the architect might fix.

2. SAME—*provision for changes, etc., in work, construed.* Where a contract for the construction of a building provides that "changes, additions and alterations" in the work may be ordered and paid for as extra work, or deducted, as the case may be, on the architect's estimate, it will be held to mean only such "changes, additions and alterations" as may be incidental to the complete execution of the work as described in the plans and specifi-

cations, and therefore of only minor and trifling importance. Any material departure from such plans and specifications, resulting in a new and substantially different undertaking, can not be regarded as within the meaning of such a provision, and the contractor, in case of such material and substantial change, is not limited or governed by the original contract as to his compensation for the work.

3. SAME—*estoppel of party, by his conduct, from availing of an abandonment of a special contract.* In case of the abandonment of a special contract for labor, work and material by one party thereto, there is no presumption of estoppel against the right of the other party to avail of it, and hence the law of estoppel is not an indispensable element in the doctrine of abandonment. It may, or it may not, apply in such cases, and if relied on it is matter of special defence.

4. SAME—*when architect's decision is not final, though so expressed in contract.* Where a building contract provides that in case changes, additions or alterations are required in the work, and made, the price to be paid extra or deducted therefore shall be "subject to the valuation of the architect," whose decision shall be final, it is the architect's *judgment,* and not his *arbitrary will,* that is made conclusive, and if he acts fraudulently his decision will not conclude the party whom he attempts to wrong.

5. Under such a provision in a contract, if it be shown that the architect, in making his decision, has disregarded important, clearly established or obvious facts, of which there is some evidence in the record, the *prima facie* presumption will be that he did so willfully.

6. Where a building contract makes the estimate and valuation of an architect final on the parties as to extra work, caused by changes, additions or alterations ordered, the architect can only exercise the right of determining the value of such extra work and material in the manner provided in the contract.

7. INSTRUCTION—*whether submitting a question of law.* Where, after a contract for making the foundation of a court house, etc., had been entered into, based upon certain plans and specifications, new plans were adopted to which the contractor was required to conform, and in a suit by him against the county the court instructed the jury that if they believed, from the evidence, that the new plans "were so different from the old plans as to provide for a new and materially different job or piece of work and foundation, and not a mere change, addition or alteration of the foundation provided for by the old plan," (which were authorized to be made by the contract,) and that such adoption of the new plans was without the consent of the plaintiff, then the original contract was not binding on him, etc.: *Held,* that the instruction was not subject to the objection that it submitted a question of law to the jury. The jury by it are told what does not mean changes, etc.

8. SAME—*when should be qualified in itself.* A proposition in an instruction which, in and of itself, is not accurate without modification or

qualification, should be accompanied with the requisite modification or qualification.

9. SAME—*need not anticipate hypotheses of the opposite party.* It is not required that an instruction shall anticipate the existence of hypotheses contrary to that upon the theory of which it is framed. It is sufficient if it rests upon a hypothesis sustained by evidence, and states accurately and fully the law upon that hypothesis. If the evidence also fairly presents hypotheses sustaining modifying or repugnant legal propositions, those desiring to avail of such propositions may have them presented in separate instructions.

10. So where an instruction presents a *prima facie* case entitling the plaintiff to recover for the value of materials furnished and labor performed by him, upon the ground that the original contract had been abandoned by the defendant, if the defendant relies upon the fact that the plaintiff is by his conduct estopped to say that the contract has been abandoned, he should ask an instruction in his own behalf presenting the law upon that phase of the case.

11. SAME—*must be based on evidence—need not be supported by the weight of.* An instruction may properly be given based upon a hypothesis of which there is some evidence tending to prove, without regard to the weight or preponderance of the same.

12. SAME—*as assuming facts.* It is not objectionable in an instruction to assume as true a pertinent matter about which there is no dispute. Nor does an instruction submit a legal proposition which tells the jury that although they may believe, etc., then the law is so and so.

13. ESTOPPEL—*of county, by acts of its agents.* A county may be estopped and concluded by the acts and declarations of its agents appointed to superintend and supervise work being done for it under a contract, made in relation to the matter of their agency.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of DuPage county; the Hon. JOHN H. WILLIAMS, Judge, presiding.

Mr. E. R. BLISS, and Messrs. STILES & LEWIS, for the appellant:

A contract once made is presumed to exist until it is shown to have been reformed or rescinded. *Love* v. *Edmonston,* 3 Ired. L. 354.

The language, "any changes," etc., shall not invalidate or impair the contract, is very broad and comprehensive, and

will permit any changes whatever in the plans, provided the work to be done is still the foundation for a new court house. The words, "any additions, changes or alterations," are not technical words to be construed by the ·jury. It is the duty of· the court to construe and give their meaning.    2 Parsons on Contracts, 492.

What the contract required to be done, was a question of law for the court; whether it had been done, a question of fact for the jury.    *Worcester Medical Institute* v. *Harding*, 11 Cush. 285; *Streeter* v. *Streeter*, 43 Ill. 155; *Glacius* v. *Black*, 67 N. Y. 563; *Robsobacher* v. *Ware*, 3 Iowa, 85; *Andrews* v. *Tedford*, 37 id. 314; *Monadnock R. R. Co.* v. *Felt*, 52 N. H. 379.

Mere deviations and changes of the plan will not imply abrogation or abandonment, where the contract expressly provides that such deviations and changes may be made. *Bozarth* v. *Dudley*, 14 N. J. L. 304.

If the adoption of the new plans amounted to a breach or abandonment of the contract by the county, Harms was entitled to abandon it, too, and sue for what he had done, and damages.    But in such case he was required to take his position distinctly and unequivocally.    *Weeks* v. *Robis*, 42 N. H. 316; *Sumner* v. *Parker*, 36 id. 449; *Evans* v. *Montgomery*, 50 Iowa, 325; *Carney* v. *Newberry*, 24 Ill. 203.

An architect has no authority, as such, to order deviations from the plan, or to waive or make a new contract.    *Cooper* v. *Langdon*, 9 M. & W. 60; *Stuart* v. *City of Cambridge*, 125 Mass. 102; *Benton Co.* v. *Patrick*, 54 Miss. 240; *Starkweather* v. *Goodman*, 48 Conn. 101.

The supervisors have no power to act individually.    It is only when convened and acting together as a board of supervisors that they represent and bind the county by their acts. Where the officers or agents of a public corporation have no powers with respect to original matter, we regard the rule to be that neither their acts nor their individual knowledge in

respect to the matter can in any way bind or affect such corporation. *Benton* v. *McDonough County*, 84 Ill. 384; *Rice* v. *Plymouth County*, 43 Iowa, 136.

The parties' construction of a contract, as shown by their acts in respect to it, when reasonable, will govern. *Vermont Street M. E. Church* v. *Brose*, 104 Ill. 206; *Patterson* v. *Camden*, 25 Mo. 13; *Whitehead* v. *Bank of Pittsburg*, 2 W. & S. 172; *Chapman* v. *Black*, 5 Scott, C. P. 515; *St. Louis Gas Light Co.* v. *City of St. Louis*, 46 Mo. 121; *Chicago* v. *Sheldon*, 7 Wall. 50; *Garrison* v. *Nute*, 87 Ill. 215.

The parties were bound by the valuations of the architect, unless impeached for fraud or mistake. *Snell* v. *Brown*, 71 Ill. 133; *Korf* v. *Lull*, 70 id. 420; *Coey* v. *Lehman*, 79 id. 173; *Downey* v. *O'Donnell*, 86 id. 49; *Finney* v. *Conden*, id. 78; *Dingley* v. *Green*, 54 Cal. 333.

Mr. J. V. LE MOYNE, and Mr. E. H. GRAY, for the appellee:

If fraud is wanting there can be no equitable estoppel. There must be deception, and change of conduct in consequence, in order to estop a party from showing the truth. *Dorlarque* v. *Cress*, 71 Ill. 380; *Chandler* v. *White*, 84 id. 435.

Estoppels *in pais* may be applied to municipal corporations. *Chicago, Rock Island and Pacific R. R. Co.* v. *City of Joliet*, 79 Ill. 25; *Logan County* v. *City of Lincoln*, 81 id. 156; *Northwestern Ry. Co.* v. *People*, 91 id. 251; *Martel* v. *City of East St. Louis*, 94 id. 67.

Counsel also contended, at considerable length, that the plaintiff's instructions were proper, and based upon evidence, and also reviewed the evidence and considered its bearing and weight.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

On the 6th of October, 1875, a contract was made, and its terms reduced to writing, and signed by the parties thereto, whereby Henry Harms, in consideration of certain specified

payments agreed to be made to him by the county of Cook, agreed "to furnish the materials and labor, and perform all the excavating, make the roadway, perform the piling and concrete work, together with the stone and mason work, including the brick work and sewerage," that might "be required in and about the construction and erection of the foundation of the new court house" then "about to be erected by the county of Cook" in the city of Chicago, "according to the plans and specifications of J. J. Egan, architect." Work was commenced under this contract, and prosecuted until the 17th of January next following, when the county board rescinded its action, taken before the making of the contract with Harms, whereby it had approved and adopted the plans for the court house, in view of which that contract was made, and approved and adopted new plans, prepared by the same architect, in their stead. Thereafter, Harms furnished the materials and did the work to fully construct and complete the foundation of the court house, under the direction of the architect and superintendent of the county, in conformity with the plans last approved and adopted by the county. This suit was brought in the circuit court, for the value of the materials and work and labor thus furnished and performed by Harms. This appeal from the affirmance of the judgment of the circuit court by that of the Appellate Court, brings before us only the correctness of the ruling of the Appellate Court in respect to the propositions of law involved in the giving and refusing of instructions, and in respect to the admission of certain evidence on behalf of appellee against appellant's objection, for no other questions of law were raised and passed upon during the progress of the trial.

The following instruction, given at the instance of the plaintiff, is objected to:

"If the jury believe, from the evidence, that the new plans for a foundation, adopted by the commissioners January 17,

1876, were so different from the old plans as to provide for
a new and materially different job, piece of work and foun-
dation, and not a mere change, addition or alteration of the
foundation provided for by the old plan, and that such adop-
tion of the plans was without the consent of plaintiff, then
the original contract was no longer binding upon the plain-
tiff, and he would be entitled to be paid according to meas-
urement and value for such work and materials, if any, as
the evidence shows was furnished to defendant and accepted
by said board of commissioners, with full knowledge on their
part,—if the jury so find, from the evidence, that the same
was furnished upon an implied contract to pay for the same,
not under the contract read in evidence."

The grounds of objection insisted upon in argument are,
first, it submits a question of law to the jury; and second,
it ignores the effect of the conduct of the parties in regard
to the continuance of the contract, and its meaning as to
the extra work. We can not coincide with counsel on either
proposition.

*First*—One of the "general conditions" in the specifications
annexed to the contract is as follows: "If the contractor
shall be ordered to execute any work, or make any additions,
changes or alterations in the work, as hereinafter set forth,
and as indicated on the plans, drawings and sections here-
with submitted, then it shall be understood and agreed upon
that such changes, additions or alterations, if so ordered,
shall not invalidate or impair the contract, but they shall be
paid for as extra work, or deducted from the original amount
of the contract, as the case may be,—such extras or deduc-
tions, if any, to be subject to the valuation of the architect,
whose decision and valuation of them shall be final and
binding upon both the parties to the contract,"—and that
portion of the instruction to which the first objection is urged
has reference to this language. It is quite clear the instruc-
tion does not, as counsel seem to believe, leave the meaning

of this language to the jury. The jury are told what does not mean "changes, additions and alterations," and they are left to determine whether, as matter of fact, what was done was what they are thus told does not mean "changes, additions and alterations." The words, "and not a mere change, addition or alteration," etc., add nothing to the effect of those previously used, the *gist* of the whole instruction lying in the statement of what does not come within the meaning of the words, "changes, additions and alterations." And the only serious question is, whether the language of the instruction is, in that respect, accurate. We think it is—at all events, sufficiently so for all practical purposes. The contract was made pursuant to bids or proposals previously invited by published notices, and those bids were made upon calculations based upon the plans and specifications annexed to the contract. We are not authorized to assume the furnishing of these plans and specifications, and the inviting of these bids or proposals, were intended either to entrap the unwary or as an idle and useless ceremony; but we must, on the contrary, assume they were intended in good faith, for the purpose of intelligently and *bona fide* making a contract for the construction of the foundation of the court house. If intended for that purpose, the work to be done would have to conform, in all material respects, to that described in the plans and specifications; and if materially variant therefrom, it would necessarily be a new and different work, because not within the contemplation of the parties when the contract was made. We do not conceive that the prefixing of the word "any," materially enlarges the meaning of the words "changes, additions and alterations," for if there is only "change, addition or alteration," the contract must govern; if there is more than this, it does not, and the question is, simply, what constitutes "changes, additions or alterations," within their meaning as here used. Counsel insist there is no limit to the changes, additions or alterations that may be made. If

this be true, then the advertising for bids and the stipulating of prices in the contract were useless. The contract should then have been drawn that the county would pay for the work at a valuation to be fixed by its architect.

Obviously, under a contract to construct a framed building at stipulated prices, a party could not be required to construct a stone or brick building, at prices to be fixed by the architect of the other party, by the use of these words in the contract. Nor could a party, by virtue thereof, contracting to build a small and inferior brick or stone building, be required to construct a large and superior stone or brick building. The mere combination of proportions and quantities, even of materials of the same class or grade, may be so different in different buildings of the same dimensions, that a party would not make the same bid, or be able, without financial loss, to construct them all for the same price.

The terms stated in the writing were, we think, the controlling inducement to the contract, and the "changes, additions and alterations" therein provided for must have been contemplated and intended to be but such as were incidental to the complete execution of the work as described in the plans and specifications, and therefore of only minor and trifling importance, for otherwise some definite mode of determining what prices should be paid for them would also have been prescribed by the writing. We think any material departure from the plans and specifications with reference to which the contract was made, which resulted in a new and substantially different undertaking, can not be regarded as within the meaning of this language. We think it was only intended to describe and provide against those ordinary and comparatively unimportant departures from the details in the plans and specifications which, during the progress of the work, might become necessary, or at least convenient, to effectually complete the work as it is contemplated by the plans and specifications it should be completed, and

which could not, at the date of making the contract, have been certainly anticipated, and therefore provided against. We can not admit that a party entering into a contract to do a given work at stipulated prices, can, by the use of these words in the written contract, be made to do a different and more expensive work at prices to be named altogether, or in large part, by the architect of the other party.

*Second*—If, after the contract was abandoned by the county, Harms, by his conduct, estopped himself from availing of that abandonment, the county could interpose the estoppel in defence. But in case of abandonment by one party there is no presumption of estoppel against the right of the other party to avail of it, and hence the law of estoppel is not an indispensable element in the doctrine of abandonment. It may or it may not apply in such cases, and if relied upon, it is matter of special defence. So, here, this instruction presented a *prima facie* case entitling Harms to recover for the value of the materials furnished and labor performed by him, upon the ground that the contract had been abandoned by the county; and if the county relied upon the fact that Harms was, by his conduct, estopped to say that the contract was abandoned, it should have asked an instruction in its own behalf presenting the law upon that phase of the case. Undoubtedly a proposition which, in and of itself, is not accurate without modification or qualification, if presented in an instruction, should be accompanied with the requisite modification or qualification. But that is not the character of the question before us. Here the proposition, on the assumed hypothesis, is accurate, without modification or qualification. But there may be, and it is claimed there is, in the evidence, sanction for a repugnant proposition, which entirely nullifies that announced. Both, as independent propositions, may be correct, but the latter being correct, the former is rendered inoperative. The latter, clearly, therefore, should be embodied in a distinct instruction. It is not

a necessary element in the instruction previously given, but is a modifying or qualifying circumstance wholly independent of it. The rule is, it is not required that an instruction shall anticipate the existence of hypotheses contrary to that upon the theory of which it is framed. It is sufficient if it rests upon a hypothesis sustained by evidence, and states, accurately and fully, the law upon that hypothesis. If the evidence also fairly presents hypotheses sustaining modifying or repugnant legal propositions, those desiring to avail of such propositions may have them presented in separate instructions.

The next instruction given at the instance of the plaintiff, to which objection is urged, is as follows:

"Even though the jury should believe, from all the evidence in the case, that the written contract between plaintiff and defendant, offered in evidence, was not abandoned or rescinded by the defendant, and that the architect, Egan, had the right to fix and determine the value of any work and materials furnished by the plaintiff, and not included in the original contract, plans and specifications, yet if the jury further believe, from the evidence, that in exercising such right the architect acted fraudulently and in bad faith, then such act would not be binding upon plaintiff."

It is admitted by counsel for appellant that this, "considered in the abstract, asserts a correct proposition of law," but they deny that there was any evidence upon which to base it. It is enough to say upon the question thus presented, that we have carefully examined the evidence preserved in the record, and are of opinion there is sufficient evidence upon which to predicate the instruction. Of course, we express no opinion as to the weight of such evidence. It is the architect's *judgment,* not his *arbitrary will,* that the contract makes conclusive on the questions submitted to his decision. There is much here in evidence, which it is not

necessary that we should repeat, tending to show that the latter was exercised, and not the former. If it be shown that an architect in making his decision has disregarded important, clearly established or obvious facts, (of which there is some evidence in the record,) the *prima facie* presumption is that he did so willfully. (Morse on Arbitration and Award, 539.) There is, also, some evidence here of declarations of the architect of a deliberate intention to oppress Harms,— equivocal, it is true, in that the means were not expressed, but warranting the inference of the intended use of arbitrary will, instead of the exercise of an impartial judgment, in determining the rights of the respective parties on questions arising under the contract.

The next and the last instruction given at the instance of the plaintiff to which objection is urged, is this:

"Even though the jury may believe, from the evidence, the contract between plaintiff and defendant, offered in evidence, was not cancelled by defendant, and that any work and materials furnished by plaintiff were extra under such contract, and that the architect had authority to fix and determine the value of such extra work and material, still he could only exercise such right and authority in the manner provided by said contract."

Three objections are urged: First, that it is left to the jury to determine a matter of law; second, that the jury would be authorized to consider that they must give a verdict on the basis of measurement and value; and third, that it repels the idea that Harms could waive his right to have an order in writing from the architect, when required to make "changes, additions or alterations" in the work. Neither objection, in our opinion, is well taken. No legal proposition is submitted to the jury. The language is hypothetical, and states what the law is with reference to a hypothetical case, which it is in effect assumed the defendant may claim is

established by the evidence. So far as the instruction refers to the rights of the parties under the contract, it is undoubtedly correct; and it has never been held objectionable to assume as true in an instruction a pertinent matter about which there is no dispute. The jury are not told they must find these things to be facts, or that they must find what the contract is with reference to these things, but merely that although they may believe, etc., the law is as thus announced.

*Second*—We can not perceive any reason for holding, as contended by counsel, that the inference would result to the jury that they must give a verdict on the basis of measurement and value. The instruction does not assume to direct on what basis a verdict should be rendered. It relates to an entirely different subject. But to obviate all liability to misapprehension by the jury in this respect, as well as in respect to a like objection, not before noticed, taken to the second of the plaintiff's instructions, the court, at the instance of the defendant, instructed the jury thus:

"The court instructs the jury that if they believe, from the evidence, that the contract entered into on the 6th day of October, 1875, was not rescinded, and by its terms any changes, additions or alterations, if any such should be ordered, should not invalidate or impair the contract, but should be paid for as extra work, or deducted from the original amount of the contract, as the case might be, such extras or deductions, if any, to be subject to the valuation of the architect, whose decisions and valuations of them should be final and binding upon both parties to the contract, and that said Egan did submit his estimates of the value of them in the manner provided by and in conformity with said contract, then the parties to said contract are bound by his findings, unless the same be fraudulent or mistaken, the burden of proving which rests upon the plaintiff."

With this instruction before the jury we do not think, in any view, it is reasonable to suppose that they could have been misled on the question of damages, in the respect contended, by either instruction.

It is contended that there was error in the refusal of the court to give the defendant's ninth, tenth and thirteenth instructions as asked, and also in admitting in evidence what the architect said he would do for the plaintiff in reference to prices of work or manner of estimating his compensation, and what the building committee said to plaintiff. The rulings in these several respects present but a single question, namely, whether the county, under the circumstances, may be concluded and estopped by the acts and declarations of these parties as its agents and representatives. That it may be so concluded and estopped is settled by *Sexton* v. *City of Chicago*, 107 Ill. 323, *City of Chicago* v. *Chicago and Western Indiana R. R. Co.* 105 id. 85, and *Chicago* v. *McGraw*, 75 id. 570.

Perceiving no cause to disturb the judgment below, it is affirmed.

*Judgment affirmed.*