### BOWSER, Inc. v. HAMILTON GLASS CO.
### No. 10765.

United States Court of Appeals
Seventh Circuit.

Oct. 9, 1953.

Rehearing Denied Nov. 6, 1953.

Henry H. Koven, Howard R. Koven, Charles N. Salzman, Chicago, Ill., for appellant.

Raymond Shaheen, Chicago, Ill., Roger Q. White, Chicago, for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Defendant appeals from a judgment for $4675 entered against it in a cause wherein jurisdiction was invoked because of diversity of citizenship.

Plaintiff, a manufacturer, negotiating with the United States Air Force on a bid to manufacture and deliver certain apparatus for the Air Force, finding itself unable to produce certain of the parts to be supplied, before completing its contract, solicited bids from subcontractors for manufacture of those parts. The articles with which the instant controversy is concerned are 1400 variable reflector glasses. In response to the solicitation, defendant submitted a price of 22¢ each. Thereupon, on December 21, 1948, plaintiff forwarded to defendant its formal purchase order for 1400 glasses at 22¢ each as quoted. This order provided specifically that the goods must conform to "Spec. 93–24794"; that blueprints were attached, and that the products were subject to inspection by the Air Force inspector at defendant's plant. The blueprint bore the recital "Material; Reflector Sight Glass, Spec. 93–24794". Upon receipt of the order, defendant on December 23, 1948, acknowledged its receipt and advised plaintiff that it would have 100 of the plates ready on January 10, and that in case plaintiff desired that the Air Force inspector examine them before defendant proceeded with fabrication of the entire lot, defendant would be glad to be advised promptly of the date when the inspector would arrive.

From this it is clear that the ultimate and final contract consisted of the purchase order for 1400 reflector glasses at 22¢ to be manufactured according to the specifications mentioned, subject to inspection by the United States Air Force, and its acceptance by defendant. The only possibility of uncertainty in the terms is as to the specifications, for the purchase order does not explicitly say that they are those of the United States Air Force; therefore, in that respect, the contract, literally speaking is uncertain. However, that is certain which can be made certain. It appears without dispute that defendant knew that the parts were to be used by the United States Air Force, and that they were to be inspected by an inspector from that

Force and that it asked to be advised as to when the inspector would arrive. It seems perfectly obvious to us, as it apparently did to the District Court, that both parties contemplated that the parts to be supplied should comply with the government specifications and that such was the agreed intent and purpose of the two parties to the contract. We think the District Court rightfully concluded, therefore, that a binding contract existed between defendant and plaintiff for the manufacture and delivery of the 1400 reflector glasses in accord with the Air Force specifications.

■ It is equally clear that defendant failed to check requirements and proceeded with production without knowing or attempting to ascertain whether the articles it was manufacturing were being made in accord with the agreed specifications or otherwise. Learning later from the representatives of the Air Force that its product did not so comply, defendant declined to proceed and asserted it would "cancel" the agreement. Thereupon plaintiff procured the merchandise from another source at an additional expense and loss represented by the amount of the judgment entered.

What we have said ought to dispose of the litigation, for, inasmuch as the court rightfully found that a binding contract existed and had been broken, it follows as a matter of law that plaintiff should recover its damages. However, defendant insists that it was justified in believing that the specification number referred to the product number or the parts number. There is nothing in the evidence upon which such a premise can be based; indeed, the plain language of the contract is to the contrary. We agree with the trial court that no reason was shown why defendant should be excused from performance.

■ It appears that plaintiff did not know what the specifications were. Because this was work which it was not equipped to do and which it did not contemplate doing but which it intended to have performed by a subcontractor, it did not concern itself with the specifications governing the subcontract but provided in its order that the subcontractor should comply with them. There was no deception in this, for the agreement expressly stipulated that the specifications would govern. Defendant made no protest that they were not disclosed. It was bound to know where they could be obtained and took its own risk in attempting to perform the contract without attempting to obtain them.

The cases cited by defendant in this connection are not applicable. In Almini Co. v. King, 92 Ill.App. 276, neither blueprints nor specifications were attached and there was nothing in the contract to locate or identify them. In Sexton v. City of Chicago, 107 Ill. 323, the governing requirements were changed after the bid had been let, without notice to the contractor. Here the contract refers to definite specifications which are made available by the authorized governmental agency to bidders throughout the nation.

■■ Defendant suggests that there was a mistake of fact which works invalidity of the contract. However, so far as the terms of the contract are concerned, there was no mistake. There is a plain agreement to manufacture the article according to certain specifications. This the defendant promised to do and this it failed to do. The mere fact that it was at fault in not advising itself as to what was in the specifications does not amount in law to a mutual mistake but merely to negligence on its part. Nor was there a unilateral mistake justifying relief to defendant. In such a situation, the error must be known to the other party to the transaction. United States v. Jones, 9 Cir., 176 F.2d 278. There is no evidence here that plaintiff knew defendant had made a mistake as it claims now.

■■ Defendant insists further that the contract was rescinded. However, rescission calls for mutual action or comes into being as a right at law arising from the conduct of the other party. There is nothing in this record to sustain

a finding that the parties did rescind their agreement or that facts existed which warranted rescission as a matter of law. Savage Arms Corp. v. United States, 266 U.S. 217, at page 219, 45 S. Ct. 30, at page 69 L.Ed. 253; Benward v. Automobile Ins. Co., D.C., 60 F.Supp. 995, affirmed in 2 Cir., 155 F.2d 521; Williston on Contracts 1937 Ed.

Finding no error in the record, the judgment is

Affirmed.