ANTHONY P. MILLER, INC., a New
Jersey Corporation, Plaintiff,

v.

WILMINGTON HOUSING AUTHORITY,
a Public Authority of the State of
Delaware, Defendant.

Civ. A. No. 1739.

United States District Court
D. Delaware.

Nov. 3, 1959.

John Van Brunt, Jr., and Courtney H. Cummings, Jr. (of Killoran & Van Brunt), Wilmington, for plaintiff.

Thomas Herlihy, Jr., and Morris Cohen, Wilmington, for defendant.

LAYTON, District Judge.

These are cross motions for summary judgment arising out of an action[1] to recover monies allegedly wrongfully withheld under a certain construction contract between Anthony P. Miller, Inc. (Miller), plaintiff, and Wilmington Housing Authority, the defendant.[2]

Miller, the successful bidder on the prime contract, commenced construction of a low rent housing project in this area on or about May 26, 1952. However, the course of the work was plagued by numerous delays including inclement weather and, particularly, strikes, and was not finished until long after the specified completion date.

Part II, Section B, Paragraph 2 of the Contract authorized the defendant to withhold $148 daily as liquidated damages for failure to complete the contract on time.

Sec. 13(a) of the Contract reads as follows:

"13.  Delays—Damages

"a.  *  *  *  *Provided,* That the right of the Contractor to proceed shall not be terminated or the Contractor charged with liquidated damages because of any delays in the completion of the work due to unforeseeable causes beyond the control and without the fault or negligence of the Contractor, including but not restricted to acts of God, or of the public enemy, acts of the Government, acts of the Local Authority, acts of another contractor in the performance of a contract with the Local Authority, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather or delays of subcontractors due to such causes, *if the Contractor shall within 10 days from the beginning of any such delay* (unless the Local Authority, with the approval of the PHA, shall grant a further period of time prior to the date of final settlement of the Contract) *notify the Contracting Officer in writing of the causes of delay, who shall ascertain the facts and the extent of delay, and the*

---

1.  Another aspect of this case was decided by this Court in 165 F.Supp. 275.

2.  Actually, the suit concerns two construction contracts, one for the Eastlake development and one for the Southbridge development.  Both contracts are identical in language and the motions raise questions of law common to both.  I shall, therefore, consider only the motions relating to the Eastlake contract since decisions as to Eastlake will necessarily be dispositive of questions raised as to Southbridge.

*Local Authority shall,* subject to prior approval of the PHA, *extend the time for completing the work when in its judgment the findings of fact of the Contracting Officer justify such an extension, and his findings of fact thereon shall be final and conclusive upon the parties* hereto." (My emphasis.)

The plaintiff filed written notices as to the causes of the several delays with the contracting officer who, in accordance with the provisions of paragraph 13 quoted above, proceeded to "ascertain the facts and the extent of delay." He determined that of 713[3] days' delay for which extensions were requested by the plaintiff, only 304 were justifiable as having occurred without his fault or negligence.[4] Subtracting this 304 days from the actual overrun of 465 days, the contracting officer determined that 161 days of the overrun constituted inexcusable delay, which, when multiplied by the per diem penalty of $148, resulted in a proper withholding by defendant from monies due plaintiff under the Contract of $23,828 as liquidated damages.[5] The defendant Local Authority ratified this determination by resolution pursuant to the provisions in Sec. 13 quoted above.

Plaintiff alleges that defendant is wrongfully withholding this sum of $23,828, arguing that no such damages for delay are lawfully chargeable to plaintiff because the contracting officer, in making his determinations of excusable delay attributable to labor shortages, applied a formula which was entirely inappropriate and erroneous for such calculation, the result of which amounts to such gross error as to constitute constructive fraud.

Also sought to be recovered is the sum of $3,626.96, allegedly improperly retained by the defendant resulting from a dispute between the parties as to whether or not this represented work required by the Contract. The plaintiff takes the position that the work was not specified in the Contract and should be regarded as a compensable extra.

#### Defendant's Motion for Summary Judgment.

The plaintiff's first argument is predicated upon the settled principle of law which forbids the construction of a Contract by a contracting officer. United States v. L. P. & J. A. Smith, 256 U.S. 11, 41 S.Ct. 413, 65 L.Ed. 808. The second argument rests upon an interpretation of one of the provisions of the Con-

---

3. Since the entire delay amounted to only 465 days, it is clear that the 713 day figure was the total of the extensions requested for all causes from time to time during the course of the work, many of which overlapped.

4. The extensions of time requested by plaintiff and allowed by the contracting officer, respectively, for the various causes of delay are as follows:

| Cause | Requested Extension | Allowed |
|---|---|---|
| First strike | 55 days | 55 days |
| Reorganization due to strike | 16 " | 16 " |
| Second strike | 81 " | 81 " |
| Reorganization due to strike | 18 " | 18 " |
| Bad weather | 90 " | 17 " |
| Labor shortage | 226 " | 20.93 days |
| Change orders | 107 " | 95.67 " |
| Miscellaneous | 120 " | 0 |
| | 713 " | 303.60 (304) days |

5. Defendant is also withholding an additional $100.00 for a different reason, but admits that this is due the plaintiff.

tract itself which in so many words limits the power of the contracting officer to the making of fact findings and nothing more. Theoretically, therefore, if the contracting officer, in making any of his determinations, did something which amounted to a construction of the Contract itself, such a determination would have to be set aside because forbidden by the rule of law above referred to or because, by the very terms of the Contract itself, he had exceeded his authority. However, as a practical matter, the controversy arises, not from the fact that the contracting officer construed the Contract, but rather, made determinations (whether amounting to fact findings or a construction of the Contract) which were so unfair as to injure the plaintiff. Accordingly, I express no opinion on either of the first two contentions and will confine this discussion to the third point, namely, regardless of whether the contracting officer made a finding of fact or a construction of the Contract, was what he did so palpably erroneous as to be regarded in law as a constructive fraud?

■ It is a familiar principle that where parties to a building contract agree to be bound by the conclusions or decisions of an arbiter, contracting officer, engineer or architect, the Courts will not entertain jurisdiction over disputes arising from such a determination. Corbin on Contracts, Vol. 3, Sec. 652, P. 600. Mundy v. Louisville & N. R. R. Co., 6 Cir., 67 F. 633; Terminal Construction Co. v. Bergen County, Errors & Appeals, 18 N.J. 294, 113 A.2d 787; Annotation in 54 A.L.R. 1255 and 110 A.L.R. 137; Restatement of the Law, Contracts, Sec. 303. It is an equally familiar principle that Courts will entertain jurisdiction of such a dispute when it is alleged that the findings of an arbiter, contracting officer, etc., were based upon fraud and, if fraud is found, then

set aside such findings. Thus, in 110 A.L.R. at page 143, it is said:

"As stated in an earlier annotation, notwithstanding a contract makes the certificate, report, opinion, or decision of an engineer or architect conclusive on the parties, the law writes into this provision that the conduct of the arbiter must be free from fraud. Fraud on his part destroys the effect of the provision." \

See also Wagner Whirler & Derrick Corp. v. U. S., 1954, 121 F.Supp. 664, 128 Ct.Cl. 382; United States v. Lennox Metal Mfg. Co., 2 Cir., 1955, 225 F.2d 302. The law of this State is in accord with this proposition. Crumlish v. Wilmington & Western R. Co., 5 Del.Ch. 270.[6]

■ Nor is it necessary, in order for the Courts to set aside such a decision, opinion or finding, that the conduct of the arbiter amount to actual fraud. A finding of constructive fraud is sufficient. Thus, the finding or decision will be set aside if the decision was fraudulent or was induced by such inattention or indifference as to imply bad faith, American Surety Co. v. Kinnear Mfg. Co., 185 Ark. 959, 50 S.W.2d 586; or the decision was so arbitrary and grossly erroneous as to constitute bad faith, Levering & Garrigues Co. v. United States, 71 Ct.Cl. 739; or, there is proof of constructive fraud or gross mistake of such a character as to amount to a palpable and substantial wrong, Edward Edinger Co. v. Willis, 260 Ill.App. 106.

With these principles in mind, let us proceed to an examination of the questioned findings of the defendant's contracting officer in this case. In making his findings and estimating the extent of the delay attributable to shortages of labor, he devised a six-step calculation to be applied in respect of each trade. Plaintiff objects particularly to his find-

6. It is significant to note that United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113, holding contrary to the above cited cases, and upon which the defendant relies, was emasculated by statute. See 41 U.S.C.A. §§ 321, 322. Compare Corbin on Contracts, Vol. 3, Sec. 654.

ings in the case of plumbers, contending that if the findings had been correctly made, the period of shortage of plumbers would be the proper measure of all delays due to labor shortages. Accordingly, I shall confine my discussion to this calculation. The contracting officer

(1) Determined the period of time during which there existed a shortage of plumbers, i. e., 573 days (365 plus 208).[7]

(2) Determined that during that period there were 209.17 days during which delays had occurred for other reasons (strikes, weather, change orders).

(3) Deducted this concurrent period of delay from 573, leaving 363.83 days, which is the period of shortage of plumbers.

(4) Determined there was a percentage of shortage of 50%.

(5) Determined that since the contractor had only ½ his plumbing force, he must have necessarily taken twice as long to do the job and, therefore, dividing 363.83 days in half, the contract was delayed 181.92 days because of plumbers' shortage.

(6) Reduced the figure of 181.92 days to 15.19 days by multiplying 181.92 by 8.35%.

The figure of 8.35% was arrived at by the contracting officer by taking the ratio of the cost of the plumbing Contract to the cost of the entire Contract. It is to the application of this formula against the number of days of delay in the entire Contract attributable to a shortage of plumbers that the plaintiff strenuously objects.

▮ This objection appears to be well founded. The application of the so-called formula, which I shall sometimes refer to as the sixth step, was, in my judgment, a clear non sequitur because what the contracting officer was attempting to do was to relate the cost of performance of the delayed work to the time for performance.[8] Such a procedure seems to be clearly irrelevant, the more so because the contracting officer used only the estimated cost figure set forth in the Progress Schedule rather than the actual costs incurred by the Contractor which totaled approximately $447,500 more than the original estimated cost. In support of the contention that the use of such a formula is not only without precedent but also without merit in fact, the plaintiff has filed three affidavits by persons long experienced in the building trades, two of them presumably impartial engineers. If the employment of the so-called formula were to any extent defensible, it would surely be supposed that the defendant would have filed counteraffidavits. Significantly, no such affidavit was filed.

Indeed, a reading of the contracting officer's deposition reveals that he was completely inexperienced in his job, and, aside from step 6, made several obvious errors in certain of his calculations and was guilty of serious inconsistencies in others.[9]

It may be argued that a Court should be very slow in setting aside the findings

---

7. There is a dispute between the parties as to whether he found that a shortage existed for only 365 days, the 208 merely being the days remaining to the completion of the Contract, which defendant argues, or actually 573 days of shortage of plumbers, which is the plaintiff's position.

8. If we assume arguendo that there might be some slight relevancy to this approach in attempting to ascertain the number of days of total delay attributable to each cause, yet I can see no relevancy when he was attempting to find the number of days of *justifiable* delay. No formula is suggested by which this latter figure can be arrived at.

9. For instance, the contracting officer failed to make a finding with respect to electricians, as he did for the other two trades, of the percentage of shortage obtaining during the period for which the full force needed was unavailable. In the case of plasterers and lathers, he failed to deduct concurrent delays from the period of shortage but deducted them after the application of his step 6 formula. While the plaintiff, perhaps for good reasons of its own, does not particularly object to these errors, yet, they serve to illustrate the unreliability of the calculations as a whole.

of a contracting officer based upon an exercise of judgment, particularly where, as here, his conclusions were affirmed by the directors of the Authority. But it should also be remembered that in most contracts of this sort, as is true here, the contracting officer who makes the decisions is in the pay of the Authority whose directors, in affirming their agent's determinations, were approving results most favorable to the Authority.

It is unfortunate that a finding of constructive fraud must be made in so many words when, in fact, we are actually dealing with serious errors in calculations. However, the decisions refer to such miscalculations as constructive fraud and I find it necessary to pin that label upon the contracting officer's erroneous findings here although, actually, there is no hint of bad faith, dishonesty or deliberate wrongful conduct upon the part of the contracting officer or the Authority. I am sure that these errors were the product of inexperience and mistaken judgment.

I conclude, therefore, that the contracting officer in applying the formula referred to as step 6 was guilty of such obvious and gross error as, under the decisions, would justify a Court in setting the finding aside.

■ Plaintiff further argues that defendant, by breaching the specific contract provision that it would coordinate the work under the Contract, thereby causing substantial delays, is precluded from assessing liquidated damages. He cites, among other authorities, the following passage in 9 Am.Jur. (Building and Construction Contracts) § 51 (1958 Cum. Supp. p. 14):

> "By the weight of authority, where the contractee has caused a substantial delay in the beginning or progress of the work, *without any agreement for an extension of time to offset the delay*, the time limit fixed in the contract, and any provision for liquidated damages based thereon, are entirely abrogated, leaving the contractor responsible only for the completion of the work with-

in a reasonable time." (Emphasis added.)

It seems to me that plaintiff has answered its own argument by quoting the provision underlined above, for in § 13 of the Contract, it is expressly provided that "acts of the Local Authority" are to be one cause of delay for which extensions of time without penalty may be allowed. Since the parties expressly provided that delays caused by defendant would not be chargeable to the Contractor, it cannot now object that because there were such delays as were anticipated by the parties, it is relieved from liability for other delays resulting from its own fault and negligence.

An examination of the plaintiff's citations on this point demonstrates that they do not support the argument. As said in Williston on Contracts, Vol. 3, Sec. 789:

> "In building contracts there is often inserted a provision giving the architect power to certify an extension of time in certain cases, by virtue of which the effect of a delay caused by the owner operates merely as an extension of the time for performance, and a new time is substituted for the old. In that event though the owner causes delay the builder is liable in liquidated damages, but the period of delay caused by the owner is deducted from the total delay."

The plaintiff's argument in this respect is without merit. However, for reasons previously stated, the defendant's motion for summary judgment must be denied.

### Plaintiff's Motions for Summary Judgment.

■■ From the denial of defendant's motions, it does not necessarily result that the plaintiff's motions should be granted. Concededly, the plaintiff's willingness to accept the contracting officer's findings of 181.92 days of delay due to shortage of plumbers together with affidavits that this latter period represents the correct number of days of justifiable delay superficially presents a case for

summary judgment particularly where, as here, the defendant has unexplainably failed to file counteraffidavits. But where, as here, a case may rest to a large extent upon opinion, or expert testimony, a Court should be particularly slow in granting summary judgment. In this case, the result—the true period allowable for justifiable delay—may not be so much a question of factors capable of being reduced to mathematical certainty as it is the judgment of experts based upon facts wherein it is obvious that reasonable minds may differ.

While, with the exception of the so-called sixth step, the defendant's contracting officer seems to have found (and the defendant's directors approved) most of the basic facts pertinent to this dispute, nevertheless a limited amount of additional evidence may have to be brought out as a condition precedent to expert testimony which both parties may wish to offer. Moreover, there is some dispute as to certain facts found by the contracting officer which will require explanation and, in one instance having to do with electricians, he made no findings. Quotations from two decisions may be appropriate to illustrate why a Court should hesitate to grant summary relief under circumstances such as these.

In Traylor v. Black, Sivalls & Bryson, 8 Cir., 189 F.2d 213, at page 216, the Court said:

"A summary judgment upon motion therefor by a defendant in an action should never be entered except where the defendant is entitled to its allowance beyond all doubt. To warrant its entry the facts conceded by the plaintiff, or demonstrated beyond reasonable question to exist, should show the right of the defendant to a judgment with such clarity as to leave no room for controversy, and they should show affirmatively that the plaintiff would not be entitled to recover under any discernible circumstances. * * * A summary judgment is an extreme remedy, and, under the rule, should be awarded only when the truth is quite clear. * * * And all reasonable doubts touching the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment. * * * ."

And in Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130, at page 135, Judge Frank stated:

"We take this occasion to suggest that trial judges should exercise great care in granting motions for summary judgment. A litigant has a right to a trial where there is the slightest doubt as to the facts, and a denial of that right is reviewable; but refusal to grant a summary judgment is not reviewable. Such a judgment, wisely used, is a praiseworthy time-saving device. But, although prompt despatch of judicial business is a virtue, it is neither the sole nor the primary purpose for which courts have been established. Denial of a trial on disputed facts is worse than delay. * * * The district courts would do well to note that time has often been lost by reversals of summary judgments improperly entered."

A reading of the plaintiff's affidavits still leaves doubt in my mind as to whether there can be one, and only one, accepted method or formula for determining the answer to the question posed in this case. In conclusion upon this phase of the case, it is my judgment that this is a matter for a jury's decision influenced perhaps largely by the opinion of experts in the building field based upon facts, some of which may not have as yet been fully adduced. Plaintiff's motion is also denied.

### Cross Motions for Summary Judgment on the Wire Mesh Question.

The technical specifications of the Contract required the plaintiff to "reinforce slabs with welded wire mesh 6″ x 6″ of the size called for in schedule on the drawings." In the schedule on the drawings, which listed eight types of concrete slabs, the words "vermiculite &

conc." appeared next to the slab type "A" in a column headed "reinforcing". In that same column next to the other seven types of slabs was a designation of size for the wire mesh. The Contract further provided that "In case of difference between Drawings and Technical Specifications, the Technical Specifications shall govern * * *."

The defendant's motion is predicated upon the argument that inasmuch as the insertion of the words "vermiculite & conc." in the drawings was meaningless and an obvious error and, since the technical specifications (which prevail over the drawings in any event) clearly called for reinforcement by wire mesh in the case of all slabs, then it is entitled to judgment. The difficulty with this argument is that it is by no means certain in my mind that the technical specifications mean what defendant claims. It is at least doubtful whether they require wire mesh in the case of all slabs. If it were an accepted fact in the building trades that all slabs of the types here mentioned were customarily reinforced by the use of wire mesh, then the basis for the argument might have been stronger, but lacking uncontroverted affidavits as to this fact, sufficient doubt remains as to the correct interpretation of the words "reinforce slabs with welded wire mesh" to justify a denial of the defendant's motion.

This brings us to the plaintiff's countermotion. It points out that the language "reinforce slabs with welded wire mesh" does not contain the word "all" between the words "reinforce" and "slabs" and that the correct interpretation of this language is that wire mesh is required only where the sizes of the mesh are specified in the column marked "reinforcing". It treats the words "vermiculite & conc." appearing in this space as if the space were blank. Its argument would obviously be much stronger if nothing appeared in the, column.

While ingenious, the plaintiff's contention is unacceptable for two reasons. The words "reinforce slabs with welded wire mesh 6″ x 6″ of the size called for in schedule on the drawings" are susceptible of the interpretation (a) that all slabs were to be reinforced, (b) that only those slabs where the size of the mesh was specified should be reinforced. This, alone, precludes the granting of summary judgment.

The second reason is this: Assume the correctness of the affidavit of Pope which states that any one in the building trades seeing the words "vermiculite & conc." in the reinforcing column would immediately know that the person preparing the specifications had committed an error. It is settled that a bidder is presumed to have read the specifications upon which he bid. Bowser, Inc. v. Hamilton Glass Co., 7 Cir., 207 F.2d 341. There is also a well-known principle which holds that an offer containing an obvious mistake is not susceptible of acceptance. Rest.Contracts, § 71(c). From the affidavit and legal principles just reviewed, it might be argued with considerable merit that the plaintiff on reading the specification, and knowing that the words "vermiculite & conc." were an error, was duty bound to call this to the attention of the defendant, if for no other reason than to protect itself in preparing its estimates for bids. By remaining silent, it can be said that the plaintiff was, at least, compounding the error and, somewhat analogous to the tort doctrine of last clear chance, it might also be reasonably contended that, having had the last opportunity to correct the error, it cannot stand by now and take advantage of it. Further discussion of the point is unnecessary at this stage of the pleadings, it being mentioned merely to show a possible alternative reason for denying the plaintiff's motion.[10]

10. Actually, while no authority is presented for the proposition, it could be reasonably maintained that, if the jury believed plaintiff's affidavit (which is controverted) then defendant, not plaintiff, is entitled to summary judgment.

In conclusion, then, both plaintiff's and defendant's motions for summary judgment are denied as to the Eastlake and Southbridge contracts.

An order will be entered in accordance herewith.