THE PEOPLE, *ex relatione* HOES et al., *v.* CANAL TRUSTEES.

APPLICATION FOR A MANDAMUS.

Where dedications have been made by the legislature to public uses, at different times, those subsequent in point of time should be taken and used, subject to, and not interfering with, its use under the prior dedication.

By the common law, the burden of opening and repairing highways, and constructing and maintaining bridges, rests with the counties. The same burden is also imposed on counties, by almost universal usage, and the exception throwing this burden on particular corporations by prescription, only the more clearly shows the general rule. So also, the provisions of our statutes conferring jurisdiction over highways and bridges upon the county courts, establish the same general rule.

There is no distinction between the obligations resting upon the State at the time of the assignment of her interest in the canal to the trustees, and those of the trustees since.

Because the State built a number of bridges across the canal at the crossing of

The People, *ex rel.* Hoes et al., *v.* Canal Trustees.

certain highways, for the use of the public, it does not render it obligatory upon her to build bridges at the crossing of the canal of each highway.

The State has jurisdiction to cause bridges to be built out of the public treasury; but her power to build bridges across the canal, without the consent of the trustees to whom her interest therein has been transferred, is doubted.

THE nature of this application for a mandamus will sufficiently appear in the opinion of the court.

N. H. PURPLE and B. C. COOK, for relators.

J. N. ARNOLD and R. S. BLACKWELL, for respondents.]

SCATES, J. The relators ask a mandamus to the canal trustees, to compel them to build a bridge across the canal on section ten. The mandamus is refused upon the ground that there is no legal obligation upon the State or the canal trustees to erect the bridge.

The county road was established in 1835; a State road in 1845; and both relocated and established again in 1853. In 1829, the State dedicated a right of way, of 180 feet wide, for canal purposes. If this question was to be put upon mere fact of the times of these dedications to public uses, it would appear that the canal was prior in time, though not constructed until long afterwards; and that the condemnation and dedication for the purposes of the roads was of and upon the right of way of the canal; and that, therefore, it should be taken and used, subject to the burden of not interfering with its use, under the prior dedication. Such would be the effect of laying out a second highway over an older one, I presume, when it was not intended to vacate and abandon the former. But we need not resort to such arguments and reasoning from inconvenience or necessity.

The simpler question is, Where does the burden rest of opening and repairing highways, and constructing and maintaining bridges, by the common law applicable to our condition, and by our own statutes? Unquestionably with the counties; both under the law, and by common, I might almost say, universal usage. Some of the States impose these burdens upon towns and parishes; but the principle is the same. 2 Bacon, Abridg. 120, and title Bridges; Mayor, &c., Albany *v.* Cunliff, 2 Com. R. 170; Eyman et al. *v.* People, 1 Gil. R. 6; Town of Waterbury *v.* Clark, 4 Day, R. 198; City of Lowell *v.* Proprietors of Locks and Canals on Merrimack River, 7 Met. 4. And the exceptions, throwing this burden upon particular corporations, in certain cases or boroughs, or a part only of the community, by

prescription, only the more clearly proves the general rule, fixing the liability upon the counties, within their respective territory. 2 Bacon, Abridg. 120, and following; for American authorities, 7 Wend. R. 477; 17 Johns. R. 452; 1 Gil. R. 6.

Such are the provisions of our statutes on the subject of public highways and bridges, that the jurisdiction and supervision of them is conferred upon the county courts, as may be seen in the statutes at large, without a particular reference, and so ruled in Eyman et al. *v.* People, 1 Gil. 6. The common law is modified in its application to our circumstances, as a new country with limited revenue; and our courts are allowed a discretion, to some extent, in the erection of new bridges; and it may be more or less so in their repair..

I cannot distinguish, in this case, between the obligations resting on the State at the time of the assignment of her interest in the canal to the trustees, and those of the trustees since. The trustees took the property to carry out the plans of the State in reference to the canal; and it might be insisted, that they should complete the work according to that plan, except where a power or discretion was conferred upon them to alter it. The State had adopted a certain number of bridges across the canal and its feeders, for the use and convenience of the public generally, and for that of the navigation of the canal in particular. These have been built, for any thing appearing in this record.

But this case proceeds upon the supposition, that by the erection of the bridges across the canal on the highways, the State declared her intention to erect one at each highway; and so it has become obligatory upon the State and trustees. This reasoning is not legitimate. The State has jurisdiction and power to cause bridges to be built, and out of the public treasury, or this canal fund, before its transfer to others who have become interested. Since that transfer, I should question her power, without the consent of those interested, to direct its application otherwise than as agreed. Appropriations have from time to time been made out of the proceeds of the sales of the saline lands belonging to the State, to the building of bridges; but no one ever contended that thereby the State had become bound to build all the bridges, or any other bridge in the county receiving the appropriation. Yet it would be as legitimate to draw that conclusion, as in this case, notwithstanding, by the number of bridges embraced in the plans of the canal, it would appear to have been the intention either to embrace all the known public roads, or such as were in much use. Even had a specific direction to that effect been given by law, it would still have been competent to change it; the fund being public, and

under her control, as was held in the case of Richland Co. *v.* Co. Lawrence, 12 Ill. R. 1; but this could not be done as against parties with vested rights.

No mandamus would lie against the State, nor against her agents, without showing a clear duty under a specific direction of law; nor can the case be any stronger, if as strong against the trustees.

*Mandamus refused.*