BERTO G. HOLMES

*v.*

THE STATE OF ILLINOIS.

*Opinion filed February 17, 1905.*

1. TRESPASSERS—*not precluded from recovering for negligence of another.* A trespasser is not precluded from recovering for a loss occassioned by the negligence of another, unless his act, contributed to the injury.

2. CANAL COMMISSIONERS—*Rights and duties as to bridges.* While it has been decided in People v. Canal Trustees, 14 Ill., 402, that the Trustees were under no legal obligation to build bridges over the canal on highways opened after the construction of the canal, the reasoning of that court does not apply to a case where the canal was opened after the highway. The canal commissioners in the latter case, at least have the legal right, if it is not their legal duty to construct and maintain such bridges; and such has been the uniform and long continued construction of the law by the State itself, through its proper officers. The canal Trustees or Commissioners also having the legal right to enter into contract with the Commissioners of Highways for the construction and maintenance of bridges, after seventy years exclusive control of the bridge in question by the canal commissioners, it will be presumed in the absence of evidence to the contrary, that there was such a contract, and that such control was exercised in accordance with such contract.

3. SAME—*When doctrine applies to a municipal corporation.* A municipal corporation is never estopped to deny its right to make a contract, but the doctrine of estoppel is applied to it when acting in its private, as contra-distinguished from its governmental, capacity, whenever the act is within its chartered power.

4. COURT OF CLAIMS—*legislative intent in creating.*   It was not the legislative intent, in creating the Court of Claims to create thereby, new liabilities against the State.

5. RESPONDEAT SUPERIOR—*when doctrine applies to State.*  While no private action lies unless the right to bring it is expressly conferred where acts are done by the officers of towns and cities in their public capacity, in the discharge of duties imposed by the law for the public welfare, there is an implied or common law liability for the negligence of municipal officers in the performance of corporate acts which have relation to the management of the corporate or private concerns of the municipality, from which it derives special or immediate profit or advantage as a corporation.

6. ILLINOIS AND MICHIGAN CANAL—*operation of not a governmental function.*  The Illinois and Michigan canal is owned by the State as a business enterprise; its ownership, control and operation, for hire and reward, is not a governmental function.

This is a claim by Berto G. Holmes against the State of Illinois for damages for injuries to his person and property sustained as the result of the fall of a bridge over a "feeder" of the Illinois and Michigan canal. Claim is made for five thousand ($5,000.00) dollars, but this is reduced to seventeen hundred and forty-four dollars ($1,744.00) dollars by the bill of particulars filed by claimant. The case is submitted on the evidence introduced by claimant, with the stipulation that in the decision of the case, the evidence introduced in the case of Chas. A. Peterson, Admr. v. The State, growing out of the same disaster, shall also be considered. It appears from the evidence that in 1837 and 1838 the State, through its proper officers, constructed, as appurtenant to the Illinois and Michigan canal, a "feeder," extending from Fox river to the said canal, through a portion of La Salle county, near the city of Ottawa; that said "feeder" intersected a public highway, in such county, known as "Dayton Road," previously established and used. That the State, upon said completion of such "feeder," constructed thereover, on said highway, a wooden bridge known as a "pony truss" bridge, consisting of one wooden arch upon either side, resting upon plates or abutments at either end, and thus supporting the weight of the bridge; these arches each being composed of three pieces of timber, one long piece acting

as a keystone and the other two proceeding diagonally from the ends of the keystone down to and upon the plates and abutments at either end. The bridge in question was sixty-nine and eight-tenths feet long and seventeen and one-half feet wide between the chords. And that the State has ever since maintained said bridge at its own expense, and had exclusive control thereover. It appears that neither the highway commissioners, nor county, have ever had anything whatever to do with the construction, maintenance, repair or control of such bridge; but it does not appear from the record, whether there was any contract or arrangement of any kind with reference thereto between the State, through its trustees or commissioners, and the highway commissioners, or the county.

On September 11, 1902, claimant was slowly crossing this bridge, with an ordinary threshing machine outfit, consisting of traction engine, water tank and thresher; that when the engine had reached about the middle of the bridge, going south, the bridge gave way and precipitated claimant, his employe, Andrew T. Peterson and engine and threshing outfit into the canal, killing Peterson and injuring claimant and damaging his said property. It appears that the cause of the bridges' giving way, was the very rotten condition of the south east support of the bridge, a wooden beam or support known as a "batter-post" resting on the pier; a condition not observable from the highway, but which could easily have been ascertained by the most casual inspection of the bridge. It is shown that the bridge was of a type and character, that had it been in proper state of preservation, would have supported the outfit. In fact, claimant had himself crossed it with his outfit a few weeks before. It also appears that the claimant had not observed the statute, in laying down planks on the bridge for the engine to pass over; but it further appears from the uncontradicted expert evidence in the record, that such failure to plank, in no wise contributed to the fall of the bridge; in other words, that the use of such planks would not

have distributed the weight so as to relieve the strain on the rotten support, or prevent its giving way. As stated above, claimant's employe, Peterson, was killed; claimant received wounds and scalds that kept him from his work and under a doctor's care about two months and his engine was damaged to the extent of about three hundred ($300.00) dollars, and the balance of the outfit, estimated at the value of about seven hundred ($700.00) dollars, substantially ruined; claimant's whole damage being estimated at seventeen hundred and forty-four ($1,744.00) dollars.

It is manifest from the record in this case, indeed is conceded by the State, that this claim is meritorious and presented in good faith, and should be allowed, if no legal defense be shown. Three legal defenses, however, are urged by the State, against the claim.

1st. That claimant was not himself in the exercise of due care.

2d. That the State was under no legal obligation to maintain the bridge in question.

3d. That the State is not liable for the negligence of its officers, the Canal Commissioners.

The contention that claimant was not himself in the exercise of due care, rests almost, if not wholly, on the fact that he did not lay plank for his engine to cross on, in compliance with Section 268, Chap. 121, Rev. Stat., 1903. This statute is a penal statute. Whether the reason underlying it was to distribute the load on the bridge or to prevent the wear and tear of the floor planking by the ordinary spurs or toes on the tire of the wheels of ordinary traction engines, is questionable; we are inclined to the latter view, as the more reasonable, as the effect of the use of such plank could have no appreciable influence in the distribution of the load on the support of the bridge; however, in our judgment, it is not necessary in the decision of this case to determine the reason of the law. As stated, it is a penal statute. Its violation does not, in our judgment, make the violator a trespasser; and even if it did, his trespass, on

the well recognized authorities of this State, would not preclude his recovery for loss occasioned by the negligence of another, unless his act, contributed to the injury. This the evidence clearly establishes it did not do. Claimant was slowly crossing the bridge with his outfit. He had crossed the bridge with it before, and judging from the style and apparent character of the bridge, was, we think, entirely warranted in thinking it could be safely so passed over. So that we are of the opinion, the claimant, on the whole, showed no such lack of due care as to preclude him from recovery, if otherwise entitled to recover.

The second defense urged, is that the State was under no legal obligation to either construct the bridge, or keep the same in repair. It is undoubtedly true as contended by the State, that the law confers on highway commissioners, the general duties of constructing and repairing the bridges on public highways; and that it is competent for the State to assign such duties to its subordinate municipalities. And the Supreme Court in *People, etc.* v. *Canal Trustees,* 14 Ill., 402, has held that the canal authorities are under no legal obligation to construct bridges over the canal, on highways intersecting such canal, opened *after* the construction of the canal; in this instance the road was laid out first and the reasoning of the court in the above case does not apply; indeed, the stress laid upon the fact in that case, that the canal was constructed first, would indicate an inclination to a contrary holding where the road was opened first, and furthermore, there seems in that case to be a recognition by the court, of the power and authority of the Canal Commissioners to construct and have bridges over the canal, if they see fit so to do. Section 8 of the Canal Act. (Chap. 9, Rev. Stat.) gives the Canal Commissioners control over the canal, its "feeders" and appurtenances; and Sections 23, 24 and 27 *ibid,* power to control the construction of bridges thereover and to regulate the use of the same, and that the fines incurred

by violation of its regulations shall go to them. These are all powers and rights generally conferred by statute, on the commissioners of highways, and seem to us to evince the legislative intent to confer the right and power, if not the duty, to construct and repair bridges over the canal, on the Canal Commissioners. That, it clearly appears, has been the construction of the law, by the State itself, through its proper officers. The State nearly seventy years ago constructed the bridge in question, renewed it and repaired it from time to time, and exercised exclusive jurisdiction over it. If the State, through its Commissioners, had the right and power, as we are inclined to think it had, to construct the bridge, or to at least enter into arrangements with the county or highway commissioners for its construction and maintenance, after such lapse of time, and in the absence of evidence on the question, it would on well recognized principles, be presumed that the officers performed their duty and that such an arrangement was made.

Suppose under the facts of this case this question arose on the prosecution of a person for malicious mischief, in defacing or maliciously injuring the bridge in question, in the indictment for which one of the necessary allegations would be as to the ownership of the bridge; and the State or Canal Commissioners should be the alleged owners, could conviction be defeated on the ground that the State or Commissioners were not in law the owners? We think clearly not. Furthermore, we think that while the doctrine of estoppel ordinarily does not apply against the State, yet it does in this case. This canal, its ownership and control, is not a governmental function, but a purely business enterprise. The State clearly had the power to construct and maintain the bridge in question, even though the Commissioners did not have. Having that power, and through its proper officers, its Canal Trustees and Commissioners, exercising it, through a long period of time, it should be,

and is, we think, legally estopped from denying its rightful exercise.

A municipal corporation (county) is never estopped to deny its right to make a contract, but the doctrine of estoppel is applied to it when acting in its private, as contra-distinguished from its governmental, capacity, whenever the act is within its chartered power; *Barnard & Co.* v. *County of Sangamon*, 190 Ill., 116; *City of Chicago* v. *Williams*, 182 Ill., 135; *City of Chicago* v. *Sexton*, 115 Ill., 230; *County of Cook* v. *Harms*, 108 Ill., 151.

If the question upon whom the legal duty rests to construct and repair bridges over the canal, arose between the Canal Commissioners and highway commissioners, a very different question would be presented than is now presented to this court, between the State and one of its citizens. It would certainly be a very harsh doctrine to exempt the State from liability in this case on the ground of want of authority on the part of the Canal Commissioners to construct and maintain the bridge in question; after it has at least tolerated such acts of its officers for two generations; and we cannot so hold.

The last defense urged is in our opinion, the most serious, i. e., that the State is not liable for the negligence of its officers. This as a general proposition is undoubtedly true. The act creating this court, certainly confers very broad jurisdiction on the court and seems to recognize the liability of the State in actions arising out of the acts and omissions of its officers, including "Canal Commissioners," sounding in tort, and directs us to determine claims against the State according to the principles of equity and justice. The Act of the Federal Government, establishing its Court of Claims, expressly exempts such claims from the jurisdiction of that court. But notwithstanding the omission of such exemption from our statutes, and the broad powers conferred, we are inclined to the view that it was not the legislative intent, to create thereby, new liabilities against the State. But in this case, we doubt the ap-

plicability of the doctrine exempting the State from liability, for the negligence of its officers. The doctrine finds its justification in considerations of public policy. The same considerations of public policy that the courts of this State have uniformly looked to in exempting municipalities from liability for the acts of omission and commission of their police officers, members of fire departments, etc. But the courts of this State have distinguished between such cases where they hold the doctrine of no liability; and another line of cases where the municipalities are engaged in enterprises of a business nature, for profit, in contra-distinction to purely governmental functions, and they are not exempted. Says Mr. JUSTICE MAGRUDER in *City of Chicago* v. *Williams,* 182 Ill., 135: "There is an implied or common law liability for the negligence of municipal officers in the performance of corporate acts, which have relation to the management of the corporate or private concerns of the municipality, from which it derives special or immediate profit or advantage as a corporation. But where acts are done by the officers of towns and cities in their public capacity in the discharge of duties imposed by the law for the public welfare, no private action lies unless the right to bring it is expressly conferred. This distinction is well recognized by our Supreme Court as applied to all classes of municipalities."

The Illinois and Michigan canal is owned by the State as a business enterprise, its ownership, control and operation, for hire and reward, is not a governmental function. The doctrine applied by our Supreme Court to other municipalities, applies with equal force and reason in our judgment, to the State. No considerations of public policy, (the sole reason for the rule) apply to the exemption of the State from liability for damage to the persons and property of its citizens, caused by it in enterprises of a purely business nature. On the contrary such a holding would be plainly contrary to the spirit of our constitution and laws.

We are therefore, of the opinion that claimant is entitled to an award of damages. In view of the fact that the damages are unliquidated, and the exact amount thereof are impossible of ascertainment, from the evidence, we do not feel bound by the estimates thereof made by claimant, or his counsel, but feel warranted in exercising our own best judgment as to the amount to be fixed; and we fix his damages at $1,500.00. We accordingly award the claimant, Berto G. Holmes, the sum of fifteen hundred ($1,500.00) dollars as damages to his person and property, growing out of the matter in the above entitled suit complained of.