THE NATIONAL CONTRACTING COMPANY, Appellant, v. HUDSON RIVER WATER POWER COMPANY, Respondent.

1. CONTRACT — PROVISION IN CONTRACT FOR CONSTRUCTION OF MASONRY DAM, PERMITTING ALTERATIONS IN PLAN AND MATERIALS — WHEN IT DOES NOT AUTHORIZE CHANGE OF DAM FROM ONE OF MASONRY TO AN EARTH DAM WITH MASONRY CENTER. Where a construction company entered into a contract to build a masonry dam for a water power company at unit prices for each kind of work to be performed, the payments to be made monthly for eighty-five per cent of the work done, the balance to be paid at the completion of the work or, at the option of the water power company, payment for the work to be made in first mortgage bonds of the company at a designated price, instead of in money, and the contract also contained a provision that the water power company might "make alterations in the line, grade, plans, form, position, dimensions or material of the work to be performed," and that "if such alterations diminish the quantity of the work to be done they shall

14

not constitute a claim for damages or for anticipated profits on the work that may be dispensed with," any increase to be paid for at the price named in the contract, or in case no price is fixed therein the work to be paid for "at its actual reasonable cost as determined by the engineer, plus ten per cent of said cost," such provision did not authorize the water power company, after the commencement of the work and without the consent of the construction company, to change the structure from a masonry dam to an earth dam with a masonry center.

2. SAME — CONSTRUCTION AND EFFECT OF PROVISION PERMITTING ALTERATIONS. While the provision in question gave the water power company great power to alter and modify the plans of the work and the materials and quantities that might be used in the construction of the dam, yet it did not authorize the water power company to alter or destroy the essential identity of the thing contracted for. Under the contract the construction company did not become obligated to furnish labor and materials for the prosecution of any work or the construction of any structure the water power company might designate. Its obligation was not only confined to the construction of a dam, but to the construction of a particular kind of dam, to wit, a masonry dam; and the provision that the dam was to be of masonry was as essential an element of the identity of the structure as was the provision that it was to be a dam.

3. SAME — WHEN CHANGE IN PLAN OF DAM FROM ONE OF MASONRY TO AN EARTH DAM WITH MASONRY CORE CONSTITUTES BREACH OF CONTRACT. Where the change in the dam, as proposed by the water power company, would have required many cubic yards of earth, when none was called for by the original contract, for which no price was fixed, and would have reduced the masonry to about one-third of the amount called for by the contract, so that there would have been a very substantial change in the cost of the work and the profit resulting therefrom, the proposed change constituted a breach of contract which justified the construction company in refusing to accede thereto and in abandoning the work, especially as the construction company had a substantial interest in the character of the structure itself, so far as it involved permanence and durability, since the company had agreed to receive its pay in the bonds of the water power company secured by a first mortgage on the dam and the plant of the water power company, if that company so elected, and if the scheme of an earth dam with a masonry core should prove to be a failure, the value of the bonds would be seriously impaired.

4. SAME — CONTENTION THAT WATER POWER COMPANY WAS NOT JUSTIFIED IN ABANDONING CONTRACT, NOT SUSTAINED BY FINDINGS OF FACT. Where, in the action brought by the construction company against the water power company to recover the amount claimed to be due on the contract and for loss of profit as damages, for the breach of contract by the water company, it was found by the referee that the plans

furnished by the water power company for an earth dam with masonry core "were never withdrawn, nor was the plaintiff ever advised that they would be withdrawn, or that the original plans would be restored," a contention that, even if the water power company erred in the claim made by it during the controversy with the construction company, that did not necessarily justify the construction company in abandoning the work, cannot be sustained, especially where there is no finding that the water power company was willing to carry out the contract on its part and, under the present construction of the rights of the parties, the facts found by the referee negative any such willingness.

5. ARBITRATION CLAUSE — PROVISIONS REQUIRING SUBMISSION OF CONTROVERSIES UNDER CONTRACT AND AS TO AMOUNT OF WORK TO ENGINEERS AS REFEREES — CONSTRUCTION AND EFFECT THEREOF — WHEN NOT A BAR TO ACTION. A provision in such contract that, in order to prevent disputes and litigation, all questions which might arise under the contract and as to the amount or quantity of the work to be paid for thereunder should be decided by the engineers of the water power company as referees, their decision to be final, is not a bar to the prosecution of an action, which is brought to recover; first, for the balance due for work done under the contract; second, for damages for breach of the contract. If the provision was intended to withdraw all controversies relating to the contract from the courts and submit them to arbitration, it will not be enforced. If it was intended to apply only to the amount and quality of the work done, for which pay is demanded, the provision is enforceable, and the certificate or estimate of the engineer, unless unreasonably refused, is a necessary prerequisite to a recovery for work done; but it is not a limitation upon or a bar to the cause of action for the damages caused by the defendant's breach of contract.

*Nat. Contracting Co.* v. *H. R. Water Power Co.*, 118 App. Div. 665, reversed.

(Argued April 13, 1908; decided May 19, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 15, 1907, modifying and affirming as modified a judgment in favor of defendant entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*L. Laflin Kellogg, Charles F. Brown, Alfred C. Petté* and *Philip M. Brett* for appellant. The acts of the defendant in refusing to permit the plaintiff to build the dam originally called for, and in insisting that it construct a dam funda-

mentally and structurally different, were wholly unauthorized by the contract and constituted a breach thereof by the defendant which justified the plaintiff in stopping all work thereunder and in bringing an action for the damages sustained. *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 102 N. Y. 205; *Smith* v. *Kerr*, 108 N. Y. 31; *Gillet* v. *Bank of America*, 160 N. Y. 549; *McMaster* v. *State*, 108 N. Y. 542; *County of Cook* v. *Harms*, 108 Ill. 151; *Russell* v. *Allerton*, 108 N. Y. 288; *Wright* v. *Reusens*, 133 N. Y. 298; *Smith* v. *Molleson*, 148 N. Y. 241; *Roehm* v. *Horst*, 178 U. S. 1.) The provision of the contract set up in the third defense requiring that all questions in dispute should be referred to the engineer, as referee to hear and determine the same, is not a bar to the prosecution of this action. (*N. C. Co.* v. *H. R. W. P. Co.*, 170 N. Y. 443; *McMahon* v. *N. Y. & E. R. R. Co.*, 20 N. Y. 462; *Sweet* v. *Morrison*, 116 N. Y. 119; *O'Brien* v. *Mayor, etc.*, 139 N. Y. 493; *Haggert* v. *Morgan*, 5 N. Y. 422; *D. & H. C. Co.* v. *P. C. Co.*, 50 N. Y. 250; *Seward* v. *City of Rochester*, 109 N. Y. 159; *Van Note* v. *Cooke*, 55 App. Div. 55; *Smith* v. *Alker*, 102 N. Y. 87.)

*Richard Lockhart Hand, Edgar T. Brackett* and *Augustus N. Hand* for respondent. No breach of the contract by the defendant, as alleged in the complaint, is shown. (*Sweet* v. *Morrison*, 116 N. Y. 19; *Everard* v. *Mayor, etc.*, 89 Hun, 425; *Thileman* v. *Mayor, etc.*, 66 App. Div. 455; *Becker* v. *Woarms*, 72 App. Div. 196; *Smith* v. *Mayor, etc.*, 12 App. Div. 391; *N. Y. B. Co.* v. *Springfield Co.*, 56 App. Div. 294; *H. C. Co.* v. *E. C. Co.*, 113 Fed. Rep. 256; *Schoonmaker* v. *Hoyt*, 148 N. Y. 425; *Francis Bros.* v. *Heine Co.*, 112 Fed. Rep. 899; *Fitzgerald* v. *F. Nat. Bank*, 114 Fed. Rep. 474.) The right of change is secured to the defendant by the terms of this contract. (*Clark* v. *Mayor*, 4 N. Y. 338; *Smith* v. *Gregory*, 4 Barb. 614; *Danolds* v. *State*, 89 N. Y. 36; *Miles* v. *United States*, 113 Fed. Rep. 1011; *A. B. Co.* v. *B., etc., R. R. Co.*, 124 Fed. Rep. 866; *Daly* v. *B. T. Co.*, 129 Fed. Rep. 513; *Nat. C. Co.* v. *Comm.*, 183 Mass. 89.)

A contractor who abandons performance can recover nothing. (*Moll* v. *Foery*, 43 Hun, 476; *Crane* v. *Knubel*, 61 N. Y. 645; *Van Clief* v. *Van Vechten*, 130 N.Y. 571; 13 Johns. 95; 8 Cow. 63.)   Threats to change the work do not justify the other party in refusing to perform; much less merely insisting upon a certain construction of the contract as the correct one.   (*Sewer Comrs.* v. *Sullivan*, 11 App. Div. 472; *Lawrence* v. *Dale*, 3 Johns. Ch. 23; 17 Johns. 437; *Goodsell* v. *W. U. Tel. Co.*, 13 N. Y. S. R. 278; *Ackerman* v. *Astoria Co.*, 11 N. Y. Supp. 528; 33 N. Y. S. R. 984; *Gray* v. *Green*, 9 Hun, 334; 77 N. Y. 615; *Lyon* v. *Hersey*, 103 N. Y. 264; *Davison* v. *Associates*, 71 N. Y. 333; *Somerset* v. *Ott*, 65 Atl. Rep. 1101.)   No act of the defendant prevented performance of the contract by the plaintiff or excused its non-performance. (*Lawrence* v. *Dale*, 3 Johns. Ch. 23; *St. R. P. Co.* v. *S. C. L. Co.*, 186 N. Y. 89.)   That the plaintiff had no cause of action is the law of the case as settled by the decision already had in this court.   (170 N. Y. 439.)   (*Thompson* v. *Halbert*, 109 N. Y. 329; *Butler* v. *G. A. Assn. Co.*, 103 App. Div. 273.)   The attempt of the plaintiff to persuade this court that the complaint contains two causes of action, one for failure to make payments and another for refusal to permit further performance, and that this court overruled its demurrer only as to the former is manifestly futile.   The complaint states but a single cause of action, which is for breach of contract, and the two claims are but different elements of the alleged damages.   (*Lattin* v. *McCarty*, 41 N. Y. 107; *Herndon* v. *O. E. Co.*, 89 Hun, 487.)

CULLEN, Ch. J.   On May 18th, 1900, the plaintiff and defendant entered into a written contract whereby the plaintiff, in consideration of payments to be made by the defendant, agreed to construct a dam across the Hudson river at a point near Palmer's Falls, in the county of Saratoga.   Prior to the execution of the contract the defendant had solicited proposals for the work from various contractors, submitting to such parties the specifications of the proposed structure and

a letter explanatory of its general design.   The letter stated that the dam would consist " of an earth-dam with a central masonry core, of a masonry over-fall dam and of a masonry intake dam."   The specifications contained this provision : " 2. General description.   The dam is to be built partly of masonry and partly of earth approximately on the lines shown ; but if the character of the materials or circumstances arise which render it advisable to change the location of the dam or to change the plans of the dam, the Hudson River Water Power Company expressly reserves the right to do so without payment of damages to the contractor, but all work actually completed will be paid for as per prices bid for the whole work."   The plaintiff bid on the work and thereupon negotiations proceeded between the parties, which finally culminated in the execution of the contract, the subject of this action.   That contract and the specifications which were incorporated in it differed materially from those which had been originally prepared and furnished to the various contractors.   In the general description already quoted there were erased the words " partly " preceding the word " masonry," and the subsequent words " and partly of earth," by drawing lines in red ink through the printed form of contract, so that this clause read " the dam is to be built of masonry."   At many other points in the specifications, by similar means, erasure was made of all matters or provisions referring or applicable to a masonry core dam.   The contract provided for the payment by the defendant not of a gross sum, but of unit prices for the different kinds of work that might be performed in building the structure.   Payments were to be made monthly for eighty-five per cent of the value of the work done as estimated by the engineer, full payment to be made on the completion of the work.   In the executed contract the provision for payment to the contractor was modified by a further clause which authorized the defendant to make such payment, instead of in money, in the defendant's first mortgage five per cent bonds at ninety per cent and accrued interest.   Shortly after the execution of the contract the plaintiff commenced the prosecution of the work and

continued the same until August, 1900.   About that time excavations in the river had disclosed that the bed rock on which the river section of the dam was to rest lay at a much greater depth than had been anticipated, which would result in great increase in the cost of the structure.   In view of this increased expense the defendant commenced the consideration of a modification of the character of the dam so as to substitute for a dam of masonry a dam of earth with a masonry core, and, at least for a time, it determined to make the substitution.   The defendant's engineer furnished to the plaintiff such plans and detailed drawings as were necessary at the time on the new or altered character of the structure, and required the plaintiff to prosecute the work in accordance therewith.   Against this alteration the plaintiff protested. The defendant replied, asserting its right under the terms of the contract to so modify the plans of the structure.   The plaintiff retorted that the action of the defendant was a breach of the contract, and refused to accede to the defendant's demand.   Each party insisted on the correctness of the position it had assumed.   The details of the controversy it is unnecessary to relate.   It is sufficient to say that on the 23rd of November, 1900, the plaintiff, after having given previous notice to that effect, withdrew its workmen and plants and ceased the prosecution of the work.   Thereafter it brought this action to recover the balance claimed to be due to it for work done under the contract, and for loss of profit as damages for the breach of the contract.   The answer of the defendant denied any breach on its part and counterclaimed for damages for the failure and refusal of the plaintiff to carry out the contract.   The referee before whom the case was tried rendered judgment dismissing the complaint and awarded the defendant a recovery on its counterclaim.   This judgment was affirmed by the Appellate Division unanimously, so far as it dismissed the plaintiff's complaint, and by a divided court as to the defendant's counterclaim.

The learned referee, while he felt that the disposition of the case was controlled by the decisions of the Appellate Division

and of this court (170 N. Y. 439), made on previous appeals in the cause, passed on all the facts in controversy, so that the rights of each party could be fully protected, and in our discussion we shall not go outside of those findings, passing till a a later time the claim that we are concluded by our former decision on a demurrer to one of the defendant's defenses. It is clear that the important question in this case is the right of the defendant under the terms of the contract to change the structure from a masonry dam to an earth dam with masonry core. We think it had no such right. Under the contract the plaintiff did not become obligated to furnish labor and materials for the prosecution of any work or the construction of any structure the defendant might designate. It agreed to furnish such labor and materials as might be necessary for the construction of a particular thing, to wit, a dam. It could not, under the contract, have been required to build an aqueduct, a bridge, a courthouse or a railroad. Its obligation was not only confined to the construction of a dam, but to the construction of a particular kind of dam, to wit, a masonry dam. The provision that the dam was to be of masonry was as essential an element of the identity of the structure as was the provision that it was to be a dam. The circumstances attendant the preparation and execution of the contract clearly establish this. The original specifications, before erasure, contained elaborate provisions applicable, appropriate and necessary for an earth dam with masonry core. Every one of these provisions was erased in the contract executed by the parties. The contract, however, contained this provision: " F. Alterations. It is further agreed that the Engineer may make alterations in the line, grade, plans, form, position, dimensions, or material of the work herein contemplated, or of any part thereof, either before or after the commencement of construction. If such alterations diminish the quantity of work to be done, they shall not constitute a claim for damages, or for anticipated profits on the work that may be dispensed with; if they increase the amount of work, such increase shall be paid for according to the quantity actually done, and at the

price established for such work under this contract; or in case there is no price established, it will be paid for at its actual reasonable cost as determined by the Engineer, plus ten per cent of said cost." Doubtless, this provision conferred upon the defendant great power to alter and modify the plans of the work and the materials and quantities that might be used in its construction, but the power was not unlimited. The question is one of degree, and necessarily so. Under this provision the defendant could not alter or destroy the essential identity of the thing contracted for. That the alteration was most important to the contractors is apparent from the findings of the referee. He found "that the change of plans that the defendant insisted upon its right to make was substantial, and that the changed plans would have required 380,000 cubic yards of earth embankment, when none was called for by the original contract, and for which no price whatsoever was fixed, and would have reduced the masonry called for by the contract from 119,708 cubic yards to 42,822 cubic yards." But beyond the question of the cost to the plaintiff of the substituted work or of its anticipated profit thereon, the plaintiff had a substantial interest in the character of the structure itself so far as it involved permanence and durability. It had agreed to receive its pay in the bonds of the defendant secured by a mortgage on the dam and plant if the defendant so elected. Should the scheme of an earth dam with masonry core prove a failure the value of the bonds which the plaintiff might hold would be seriously impaired. As a matter of fact the defendant did subsequently reconsider its determination to build an earth dam, and the next year built one of masonry. We are, therefore, entirely clear that the position the defendant assumed in its controversy with the plaintiff and that which it asserts in its answer, that the proposed alteration of the dam was within its rights reserved under the contract, is untenable and erroneous.

It is also urged that even if the defendant erred in the claim made by it during its controversy with the plaintiff, that did not necessarily justify the plaintiff in abandoning the work.

Doubtless there was a *locus pœnitentiœ*, some reasonable time during which the defendant might have become aware that it was in error and receded from its position.   It is not every unfounded or illegal claim a party may make during the prosecution of a large contract that justifies the other in abandoning the contract for a breach.   But on this question the learned referee has found that the plans furnished by the defendant for an earth-dam with masonry core " were never withdrawn, nor was the plaintiff ever advised that they would be withdrawn, or that the original plans would be restored." It is true that the learned referee in his second conclusion of law finds that the acts of the defendant referred to in his findings of fact did not constitute a breach of the contract on its part; and it is also true that on appeal we may treat a conclusion of law as a finding of fact, if. in reality it is such. But no one knew better than the learned referee who tried this cause the distinction between findings of fact and conclusions of law, and it is apparent that his disposition of the case was governed by what he deemed the rules of law laid down in the decisions of the appellate tribunals on the earlier appeals.   We should not be astute to construe as a finding of fact that which the referee never intended to be such.   There is no finding that the defendant was willing to carry out the contract on its part, and under our construction of the rights of the parties the facts found by the referee negative any such willingness.   It follows that the judgment must be reversed, unless we are concluded by our former decision, to which reference has already been made.

That decision was rendered by us on an appeal from an interlocutory judgment sustaining a demurrer to the third separate defense set forth in the answer, and the question certified was, " is the third answer and defense set up in the defendant's answer in the amended complaint herein insufficient in law upon the face thereof ? "   The defense so pleaded was the following provision of the contract : " To prevent all disputes and litigation it is further agreed by and between the parties to this contract, that the Engineer, Wm. Barclay Par-

sons or H. de B. Parsons, or their successors, either or both of them, shall be referee in all cases to determine all the questions that may in any way arise under this contract, and the amount or the quantity of the work which is to be paid for under this contract, and to decide all questions which may arise relative to the fulfillment of this contract on the part of the contractor, and the findings, estimate and decision of such Engineers, or either of them shall be final and conclusive," and the allegation " that the plaintiff has neither obtained nor requested any finding, estimate or decision of the engineers aforesaid, or either of them, nor has it requested this defendant to obtain the same or to submit any of the matters in question to them." Judge Werner, who wrote the opinion for the court, said of this defense : " The question presented by this demurrer is whether the clause in the contract above referred to, comes within the rule which nullifies contracts ousting the courts of their jurisdiction, or within another and equally well-established rule, that parties may covenant that no right of action shall accrue until a third person has performed specific acts or determined certain differences between them. The line of demarcation between the two classes of cases is clear and distinct. The difficulty, if any, lies in the application of particular facts to a clearly defined rule." To that statement, as a correct exposition of the law, we still adhere. In discussing the application of those principles to the case the learned judge pointed out the difficulty in the determination of the question caused by the meager record then before us, which contained nothing but the pleadings. The complaint did not set forth the contract, but stated what the plaintiff contended was its legal effect. The only part of the contract stated in the answer was the single clause which has been quoted. In this condition of the record, Judge Werner said : " Its language is somewhat ambiguous and does not so clearly set forth the agreement of the parties as to enable any court to assert without hesitation that it belongs in the one class rather than the other. Indeed, this is one of the reasons why we think we should not arbi-trarily hold that it is insufficient as a defense.   *   *   *   It

(the contract) may contain other provisions which would render the one incorporated in the third defense entirely clear, or at least reasonably free from doubt. * * * It is obvious that if the language of the contract which confers upon the engineers the power ' to determine all the questions that may in any way arise under this contract,' were not qualified by what follows, the contract would clearly come within the rule laid down in *Haggart* v. *Morgan* (5 N. Y. 422); *Seward* v. *City of Rochester* (*supra*), and other cases relied upon by the respondent, and the pleading would then be clearly insufficient in law to constitute a defense. But when we consider the language of the contract above quoted in connection with these qualifying words, to wit, ' and the amount or the quantity of the work which is to be paid for under this contract, and to decide all questions which may arise relative to the fulfillment of this contract on the part of the contractor,' it is not so apparent that the agreement is one which offends against the rule above referred to." It is obvious, from a careful reading of the whole opinion, that all the court intended to decide was that tested merely by the face of the pleadings, it could not be said as a matter of law that the defense pleaded was necessarily insufficient, but that that question should be left open till the trial of the action, when the clause pleaded would be interpreted in the light of the whole contract and of the conduct of the parties thereon. Now we have the whole contract. It is also to be borne in mind that the complaint sought a recovery for two different items : *First*, the balance due for work done under the contract ; *second*, damages for breach of the contract. The estimate of the engineer, unless unreasonably refused, was a necessary prerequisite for a recovery for work done. The defense pleaded was, therefore, a good answer to that claim, and it is evident from the opinion of Judge Werner that it was on this theory that our decision proceeded. It is true that by section 508 of the Code of Civil Procedure a partial defense must be set forth as such, but this provision was first enacted by that Code. Under the old Code whether a defense which went only to a part of the plain-

tiff's claim must be ·pleaded as a partial defense was the subject of conflicting decisions, and to settle that conflict the provision of the present Code was enacted. But the point that the third defense set forth in the answer was only a partial defense and was not pleaded as such, was not raised by the plaintiff's counsel, nor in any manner called to the attention of the court. Therefore, it was not considered by us. That a provision in a contract which would withdraw all controversies of the parties relating thereto from the courts and submit them to arbitration will not be enforced, is settled by authority (*Haggart* v. *Morgan, supra ; Seward* v. *City of Rochester, supra*), and so far from intending to overrule the doctrine of those cases, that doctrine is expressly recognized and approved in the opinion of Judge WERNER.

The judgment appealed from should be reversed and a new trial ordered, costs to abide event.

HAIGHT, VANN, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur ; GRAY, J., dissents.

Judgment reversed, etc.