(139 App. Div. 249.)

DUNNING v. ELMORE & HAMILTON CONTRACTING CO. et al.

(Supreme Court, Appellate Division, Second Department.   June 24, 1910.)

1. HIGHWAYS (§ 113\*)—IMPROVEMENTS—CONTRACTS—SUITS BY TAXPAYERS.

Where a taxpayer, who sues to set aside a contract for the construction of a public highway, under Laws 1898, c. 115, as amended, providing for the improvement of public highways, does not show fraud or corruption in the making of the contract, or the proceedings prior thereto, he must, to succeed, show that the contract is the result of illegal official acts, and it is not sufficient that the contract is unwise or extravagant.

[Ed. Note.—For other cases, see Highways, Dec. Dig. § 113.\*]

2. HIGHWAYS (§ 113\*)—PUBLIC IMPROVEMENTS—CONTRACTS—CONSTRUCTION.

Where the specifications submitted by the state engineer for the construction of a highway under Laws 1898, c. 115, as amended, providing for the improvement of public highways, reserved his right to make such changes in the plans as might from time to time appear to him to be desirable, he could not alter or destroy the essential identity of the highway provided for in the specifications, though he could make changes in the details thereof.

[Ed. Note.—For other cases, see Highways, Dec. Dig. § 113.\*]

3. CONTRACTS (§ 143\*)—CONSTRUCTION.

Where there is doubt as to the meaning of words in an instrument, they must, if possible, be so construed as not to place one of the parties thereto at the mercy of the other.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 723; Dec. Dig. § 143.\*]

4. HIGHWAYS (§ 113\*)—CONSTRUCTION—PLANS—MODIFICATIONS—VALIDITY.

The original plan of the state engineer for a highway contemplated a road encircling the face of a mountain, leaving the river side of the road open so as to afford the advantages of a river view.  It also involved the construction of three tunnels, 500, 105, and 65 feet long, and a steel bridge across a gully.  The plan was approved by the county board of supervisors.  The engineer changed the plan so as to require the road to pass through the mountain 320 feet distant from the original line, leaving the river front for a considerable part of the distance, and providing for a tunnel 1,265 feet long with no side openings, and a rock fill in place of the steel bridge.  The altered plan did not provide for ventilation of the tunnel or police protection, both of which were necessary.  *Held* that, though the state engineer could make changes in details in the plan, the changes made were unauthorized unless approved by the county board of supervisors, though the road provided by the new plan was shorter, and though it was not feasible to construct the road as originally planned, and though the cost of the construction of the road under the altered plan would be less than under the original plan, especially as it was claimed that the cost of acquiring the necessary land would be greater.

[Ed. Note.—For other cases, see Highways, Dec. Dig. § 113.\*]

5. HIGHWAYS (§ 113\*)—UNAUTHORIZED CONTRACTS—RATIFICATION.

Where the board of supervisors of a county instituted proceedings to condemn land for the construction of a public highway, under Laws 1898, c. 115, as amended, providing for the improvement of public highways, without knowing that the state engineer had materially altered the plans for the highway, and had let the contract according to the altered plan, instead of the original plan, which had been approved, and the board supposed that the description of the land to be acquired as furnished by the state engineer was the description shown on the original plan, the board did not ratify the act of the engineer in altering the plan, for, to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

constitute a ratification, there must be a full knowledge of the material facts as to the unauthorized transaction.

[Ed. Note.—For other cases, see Highways, Dec. Dig. § 113.*]

Appeal from Special ·Term, Orange County.

Action by Charles T. Dunning against the Elmore & Hamilton Contracting Company and others. From a judgment for plaintiff, the defendant named appeals. Affirmed.

Argued before JENKS, BURR, THOMAS, RICH, and CARR, JJ.

Edgar T. Brackett, for appellant.

Percy V. D. Gott, for respondent.

Joseph W. Gott, for County of Orange, Walter H. Brewster, and other Supervisors.

BURR, J. On December 2, 1907, the state engineer made a contract in writing with the firm of Elmore & Hamilton for the building of a section of road lying partly in the town of Highlands and partly in the town of Cornwall, in the county of Orange. This contract was subsequently assigned to defendant Elmore & Hamilton Contracting Company. Plaintiff, a taxpayer, brought this action against said company, the county of Orange, the supervisors of said county, the state engineer and surveyor, and the Storm King Stone Company, through whose property the said road was to be constructed, to set aside said contract and to restrain all proceedings thereunder. From a judgment in favor of plaintiff, defendant Elmore & Hamilton Contracting Company appeals.

There is neither allegation nor proof of any fraud or corruption in connection with the making of said contract or the official proceedings prior thereto. It is therefore incumbent upon plaintiff, if he would succeed, to establish that it is the result of illegal official acts. Unless he establishes this, it matters not how unwise or extravagant the contract appears; the court may not interfere. Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263; Ziegler v. Chapin, 126 N. Y. 342, 27 N. E. 471; Knowles v. City of New York, 176 N. Y. 430, 68 N. E. 860; Hearst v. McClellan, 102 App. Div. 336, 92 N. Y. Supp. 484.

On March 24, 1908, the Legislature passed an act entitled "An act to provide for the improvement of public highways." Laws 1898, c. 115. Although many times amended, its essential features, so far as they relate to this controversy, are as follows: The board of supervisors of any county may, and upon presentation of a petition by the owners of a majority of the lineal feet fronting upon a public highway within such county must, pass a resolution that public interest demands the improvement of such highway. Within 10 days after its passage, a certified copy of such resolution shall be transmitted to the state engineer and surveyor. He shall thereupon investigate and determine whether the highway is of sufficient public importance to come within the purposes of the act, and if he so determines he shall certify his approval of such resolution. In that event he shall cause the highway to be mapped, both in outline and profile. Where it may be improved by deviation from existing lines, he shall indicate it. He shall cause plans and specifications to be made of the highway to be thus im-

proved. Upon the completion of such maps, plans, and specifications, he shall cause an estimate to be made of the cost of construction, which estimate, together with a certified copy of such maps, plans, and specifications, and of his certificate of the approval of the highway so designated, he shall transmit to the board of supervisors, who, after the receipt thereof, may, by a majority vote, adopt a resolution that "such highway so approved" shall be constructed under the provisions of said act. Upon receipt of a certified copy of this latter resolution the state engineer shall advertise for bids, and thereafter award the contract to the lowest responsible bidder.

On the 20th of June, 1902, a resolution was presented at a meeting of the board of supervisors of Orange county, to the effect that public interest demanded the improvement, under the provisions of said act, of a public highway about eight miles in length. One section of said highway was described as follows:

"Thence easterly to the town of Cornwall; thence northerly to Storm King Mountain; thence easterly around Storm King Mountain to intersect with the Cornwall highway."

There was a conflict of evidence whether this resolution was then adopted, or whether it was referred to a committee of the board, known as the "good roads committee."

On November 24, 1903, at a meeting of the board, the supervisor who had introduced the resolution made a statement to the effect that the petition presented by him on June 20, 1902, and on which the committee of good roads had acted favorably, had not reached the state engineer, and that he was desirous to have the road surveyed and an estimate of the cost of construction furnished to the board. A resolution was thereupon adopted that the report be sent at once to the state engineer. On the succeeding day the clerk of the board sent to the state engineer a copy of the resolution introduced June 20, 1902, with a certificate that it had been adopted by the board November 12, 1902. Thereupon the state engineer caused a survey to be made and maps and profiles to be prepared of the road described in the said resolution, a section of which was known as route 411, and was described as follows:

"The West Point-Cornwall road from the U. S. Reservation line at West Point along the Hudson River, around Storm King Mountain, to the Village line of Cornwall, a distance of 2.47 miles in the towns of Highlands and Cornwall, Orange county, New York, and known as the West Point-Cornwall Road."

He thereafter obtained an estimate of the cost of construction, and transmitted said maps, profiles, estimate, his certificate of approval, and the proposed specifications for the doing of the work on route 411, to the said board of supervisors. On November 22, 1904, the board adopted a resolution that this section of the road be constructed "in accordance with the maps, plans, specifications and estimate prepared for such improvement by the state engineer and surveyor under the provisions of chapter 115 of the Laws of 1893; that said work be done under the charge, care and superintendence of the state engineer and surveyor; and that said maps, plans, specifications and estimate prepared by said state engineer and surveyor for said work are hereby

duly approved and adopted by this board." At the same time $112,-500 was appropriated toward the expense of construction.

In the year 1907, no contract having as yet been awarded, the state engineer concluded to change the line of a part of said road, and altered the proposed lines thereof as laid down on said maps and plans, and on the 2d day of December, 1907, after inviting proposals to construct the road according to such altered plans, awarded the contract for such construction as hereinbefore stated, and executed the necessary contract therefor. On December 16, 1907, at his suggestion, the board of supervisors adopted a resolution directing its good roads committee to procure the necessary rights of way to enable the work of construction to proceed. A copy of the said altered maps and plans had been sent to the county engineer of Orange county some time before; but he claims that when he received them he did not observe that the original plans had been altered, and it does not appear that the attention of the board had been specially called to such alteration at the time when the resolution directing condemnation proceedings was adopted. No affirmative action was ever taken by the board expressly approving the altered lines of the said road. On December 31, 1907, an application was made to condemn the right of way and for the appointment of commissioners, and in the petition then presented to the court the property which it was sought to acquire was described according to the altered maps and plans. On May 18, 1908, while the condemnation proceedings were pending, the board of supervisors adopted a resolution directing that application be made to the court for leave to discontinue the same, and this application was granted. The grounds stated were that at the time the board directed the institution thereof it was not aware of the changes which had been made in the course and direction of such highway.

Several interesting questions are presented in connection with this appeal, and have been fully and carefully argued. The first question is one of fact whether the resolution presented on June 20, 1902, was actually adopted on that day. There is no claim that it was adopted at any other time. The statement in the certificate of the clerk of the board that it was adopted November 12, 1902, was clearly erroneous. The learned trial court has found that the board did not adopt such resolution. In that connection, however, a very serious question arises whether it did not exclude competent evidence offered by defendant bearing thereon. The second question is whether the adoption of such resolution is a necessary condition precedent to the adoption of the resolution of November 22, 1904, which actually authorized the construction of the road. If not, then the failure to adopt the former resolution ceases to be of importance, because there is no question as to the adoption of the latter one. The third question is whether after the adoption of the resolution of November 22, 1904, to construct the road in accordance with the plans, specifications, and estimates previously prepared, the state engineer had the power and authority to make the alterations in the plans and specifications which he did make. If not, then of necessity this contract was invalid, for it was not the contract which the board

authorized him to make, and his act in making it was an illegal official act. We propose to consider this last question first, for its answer may render unnecessary the consideration of the other two.

The statute does not in express terms confer upon the state engineer any such power. But the specifications which were submitted to the board in connection with the original plans and estimates, and in accordance with which they determined that this road should be built, contained these words:

"The right is reserved by the state engineer to make such changes in the plans or specifications as may, from time to time, appear to him to be necessary or desirable, and such changes shall in no wise invalidate this contract."

The learned counsel for the appellant argues that, if the contract had been already executed when the plans were changed by the state engineer, the contract would still be binding, not only upon the contractor who was to build the road, but also upon the other parties affected thereby, to wit, the county of Orange and the people of the state of New York who were to pay the cost thereof. If that is so, he contends that it makes no difference, at least so far as the binding obligation of said contract upon the county of Orange is concerned, whether the change was made before or after its execution. If we grant the premise, this contention strikes us with much force. But what was the power conferred upon the state engineer by the clause of the specifications above quoted with regard to making changes? If the state engineer had by virtue thereof unlimited authority to change the contract at his will, then the board of supervisors derived little or no benefit from the requirement of the statute that the surveys, maps, plans, and an estimate of the cost of the proposed work should be submitted to them before they were asked to authorize the making of the contract. The state engineer might think that the road should be constructed along certain lines; the board in another direction. He might think certain material desirable; the board might prefer others. His judgment might be the wiser and the more accurate. The statute provides that his judgment must be confirmed by that of the board. Of course some force must be given to the clause in the specifications respecting changes. As similar provisions have been construed in other contracts relating to construction, we think that the state engineer could not alter or destroy the essential identity of the thing contracted for, although he might make changes in the details by which a given result was to be accomplished. Nat. Contracting Co. v. H. R. W. P. Co., 192 N. Y. 209, 84 N. E. 965; McMaster v. State of New York, 108 N. Y. 542, 552, 15 N. E. 417; County of Cook v. Harms, 108 Ill. 151, 159; Salt Lake City v. Smith, 104 Fed. 457, 465, 43 C. C. A. 637.

When there is doubt or uncertainty as to the meaning of words in an instrument, if possible they should not be so construed as to place one of the parties entirely at the mercy of the other. Russell v. Allerton, 108 N. Y. 288, 15 N. E. 391; Gillet v. Bank of America, 160 N. Y. 549, 55 N. E. 292. By analogy, the provisions of this contract should not be so construed as to put either the contractor who was to build the road, or the county of Orange which was to

pay a considerable portion of the cost thereof, entirely at the mercy of the state engineer. The learned trial court has found that the changes made were material and important. We think that the effect of them was to call for the construction of an essentially different road from that contemplated when the board determined upon its construction, the maintenance of which road would impose additional burdens upon the county to a considerable degree. In the original plan the road encircled the face of Storm King Mountain; in the altered plan it went through the heart of it, at its most distant point 320 feet westerly from the original line of said road. The original plan contemplated a gallery construction; that is, the rock above the road was to be quarried out, and on the river side the road was to be open, permitting light and ventilation, and affording the advantages of a river view. That plan involved the construction of three short tunnels, one 500 feet long, one 105 feet long, and one 65 feet long. It does not appear that either of these would require artificial light or ventilation. The new plan involves leaving the river front for a considerable portion of the distance and plunging into darkness through a tunnel 1,265 feet long with no side openings of any kind. It was practically conceded upon the trial that such a tunnel would require artificial light. It would seem, also, that it would be necessary to provide for ventilation and for police protection in connection therewith if it was to be safe for use. The altered plan provides for neither, and the maintenance of a lighting system, as well as of a police patrol, would involve the county in continual additional expense.

In another instance the method of construction was completely changed. Where the original plan called for a steel bridge across a gully or cove, the new plan called for a rock fill. There was evidence that by the changed plan the line of the road was straightened and somewhat shortened. While the shortest distance between two points is measured by the straight line which joins them, that is not always the most desirable line of approach. There was evidence that it was not feasible from an engineering standpoint to construct the road as originally recommended by the state engineer. That might be a good reason for abandoning the construction of the road; but it was not a reason for building a road quite different in its location and method of construction and far less desirable for use than the one authorized. There was evidence that the actual cost of construction would be less according to the new plan than the old; but as against this there was the claim, made by those whose property must be condemned for the right of way for damages, in a much larger amount than if the road ran along the face of the mountain. It is true, evidence in support of that claim was not introduced in this case. But the fact that the claim was made is a consideration which might properly have affected the judgment of the board if it had known of the altered plan. We think, therefore, that, conceding for the sake of argument that the state engineer had the power to make changes in details in the plan before the awarding of the contract, as well as subsequent thereto, the changes which he did make were not of that character, and that the contract which

he made in accordance with such altered plan was never authorized, and was therefore an illegal one.

In this view of the case it becomes unnecessary to consider the remaining questions suggested, for, conceding all that the appellant claims respecting them, the judgment must be affirmed.

We may add in conclusion that in our judgment there is no ground for claiming a ratification of this unauthorized contract by reason of the fact that the board of supervisors authorized proceedings to condemn the right of way, and that the petition therefor described such right of way as shown on the altered maps. To constitute ratification there must be full knowledge of all the material facts relative to the unauthorized transaction. 31 Cyc. 1253; Smith v. Tracy, 36 N. Y. 79; Whitney v. Martine, 88 N. Y. 535; Weber v. Bridgman, 113 N. Y. 600, 21 N. E. 985; Trustees of East Hampton v. Bowman, 136 N. Y. 521, 32 N. E. 987; Prichard v. Sigafus, 103 App. Div. 535, 93 N. Y. Supp. 152. The trial court has found, and the evidence justifies the finding, that at the time of the passage of that resolution and the institution of such proceedings the board of supervisors did not know of such alterations, but supposed that the description of the land to be acquired, which was furnished to them by the state engineer, related to and was a correct description of the land shown on the original map.

The judgment appealed from must be affirmed, with costs to the respondent the county of Orange and the board of supervisors of said county. All concur.