WESTERN NEW YORK WATER CO. v. LAUGHLIN, Mayor, et al.

(Niagara County Court. February 3, 1916.)

1. MUNICIPAL CORPORATIONS ⬅996—TAXPAYER'S ACTION—STATUTES—DISCRETIONARY ACTS.

　　Code Civ. Proc. § 1925 and General Municipal Law (Consol. Laws, c. 24) § 51, giving a taxpayer an action in the interests of other taxpayers to enjoin the waste of public funds and illegal official acts, and to compel restitution of public funds corruptly or illegally disbursed, etc., give a remedy only in cases where fraud or corrupt or illegal official acts are shown, and are not intended to empower the courts to review discretionary action or acts of public boards or officials.

　　[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2166; Dec. Dig. ⬅996.]

2. WATERS AND WATER COURSES ⬅194—TAXPAYER'S ACTION—DISCRETIONARY ACTION.

　　Under the charter of the city of Niagara Falls (Laws 1904, c. 300), as amended by Laws 1908, c. 145, adding sections 590–606, section 591 of which

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

authorizes the city to engage in furnishing its own water supply, and section 220, requiring the common council to notify owners of property fronting on a street to have connections with the water mains made and extended to the curb lines, and providing that on the owners' default the city might have the work done at the owners' expense, the board of water commissioners was vested with discretion as to whether the main in the city's own water system should be laid in the middle of a street, on the other side of which plaintiff water company, a competitor, had laid a main, or on one side of the street only, with service connections crossing the street, or on each side, so that the pavement need not be disturbed, and the board's use of material, which it had on hand, in making some private water connections free of charge, so as to secure those for whom connections were made as customers for the city, as against plaintiff's competition, were acts within the board's discretion, and not subject to judicial review.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 280; Dec. Dig. &⟶194.]

3. MUNICIPAL CORPORATIONS &⟶864—MUNICIPAL WATER SUPPLY—CHARTER PROVISIONS—BOARD OF WATER COMMISSIONERS—CONTRACTS.

Niagara Falls City Charter, § 180, created a board of estimate, and required all officers, etc., to furnish the mayor written estimates of the expenditures of their offices for the following fiscal year, and that the board of estimate should estimate the amount necessary to be raised by taxation and submit to the common council, and should estimate probable revenue other than general taxes and credit them to the purpose for which they were available; and section 181 provided that the several boards should incur no debts or expenses in excess of the amounts allowed to and provided for them, and should enter into no contract involving expenditure in excess of the amount estimated and allowed them, and that any such contract should be void; and, as amended by Laws 1908, c. 145, adding sections 590–606, by section 591 authorized the board of water commissioners to improve the city's plant and to issue bonds therefor when authorized by the board of estimate, and to prescribe the water rates, by section 597 provided that all moneys from water rates should be placed to the credit of the water fund and used only for water purposes, by section 598 required the board to deliver to the city treasurer a list of water rates for the ensuing six months, by section 601 required the board to report to the common council, by section 602 required the board of estimate to provide for payment of the rents fixed by the board of water commissioners, by section 603 made it the duty of the water board to estimate the water revenues and expenses, and if the revenues were insufficient to estimate the deficiency, and made it the duty of the board of estimate to assess such amount, by section 605 transferred the control of waterworks from a board of public works to the board of water commissioners, and by section 606 repealed parts of the act relating to waterworks. *Held*, that the restrictions of section 181 related to contracts for disbursements from the funds raised by general taxation, and were not applicable to the board of water commissioners with respect to the letting of contracts, when there was a deficit in the funds of the water board.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1828–1835; Dec. Dig. &⟶864.]

4. MUNICIPAL CORPORATIONS &⟶996—TAXPAYER'S SUIT—ACTS REVIEWABLE.

Under such charter, the fact that the common council authorized a transfer to the water fund of the amount raised by general taxation for that fund on account of water rents for water furnished to the city, instead of waiting until the following month, as provided by section 602, because money was due and payable on January 1st for interest on bonds, and

in order to avoid a special meeting of the common council on that day, was not subject to judicial review, where the statute did not prescribe the method of bookkeeping to be employed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2166; Dec. Dig. ☞996.]

Taxpayer's action by the Western New York Water Company against William Laughlin, individually and as Mayor of the City of Niagara Falls, and members of the Common Council and of the Board of Water Commissioners, and certain contractors, to compel the restoration of municipal funds alleged to have been illegally diverted and expended. Complaint dismissed.

Edward H. Letchworth, of Buffalo, for plaintiff.
Furman G. Anderson, Corp. Counsel, Morris Cohn, Jr., and Augustus Thibaudeau, all of Niagara Falls, for defendants.

LAUGHLIN, J. This litigation is the outcome of legislation by which, instead of recognizing that competition in supplying water to a municipality and its inhabitants involves, from an economic standpoint, a great waste of money in the duplication of plants and mains, and in serious inconvenience, annoyance, and injury to the public incident to the opening of streets and the damage to pavements and other local improvements thereby, and that therefore the business is in its nature monopolistic, in the sense that there should be but one service corporation therefor operating in a given territory, with the water rates to be charged thereby regulated by law, and on that theory extending the franchises of the plaintiff, a private water corporation, with a plant, mains, and service pipes, duly engaged in supplying a large part of the city and its inhabitants with water, or requiring the city to acquire the plant and franchises of the plaintiff, the city has been authorized to acquire the plant and franchises of the plaintiff at private sale or by the exercise of the power of eminent domain (section 592, c. 300, Laws 1904 added by Laws 1908, c. 145, being the charter of the city of Niagara Falls), and, without doing either, the city has been vested with discretionary power, which it has exercised to engage in competition with the plaintiff (Charter, § 591). This unequal struggle accounts for the great expenditure of time and money by the plaintiff in investigating the city and the board of water commissioners, evidently with a view to embarrassing the municipality with respect to letting contracts for the extension of its water supply system in competition with plaintiff.

[1] The plaintiff, however, is not appealing to the court for protection in its business against its competitor. It comes here as a taxpayer, pursuant to the provisions of section 1925 of the Code of Civil Procedure and section 51 of the General Municipal Law (Consol. Laws, c. 24), in the interest of all other taxpayers as well, complaining of the public officers, and asking that they, and the contractors to whom they have disbursed public funds, make restitution, and the decision of the issues depends upon whether or not the plaintiff has made out a cause of action on the theory that these disbursements were legally

made. There is no charge of corruption, fraud, or even bad faith, and it has not been shown that the city has sustained any loss on account of the acts of which plaintiff complains. Indeed, the learned counsel for the plaintiff recognizes that these disbursements have been a financial benefit to the city, for on the submission of the case he withdrew the demand that the funds be restored, and only demands judgment for a nominal sum. He insists, however, that he has shown illegality in official acts, and that they should be so declared and emphasized by a judgment against defendants, although not for a substantial sum.

The remedy given by the statutory provisions under which this action is brought to enjoin waste of public funds and illegal official acts, and to compel restitution of public funds corruptly or illegally disbursed, is confined to cases where fraud or corruption or illegal official acts are shown, and it was not intended to empower the courts to review discretionary action or acts of public boards or officials. Knowles v. City of New York, 176 N. Y. 430, 68 N. E. 860; Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263; Dunning v. County of Orange, 139 App. Div. 249, 124 N. Y. Supp. 107; Lawson v. Lincoln, 86 App. Div. 217, 83 N. Y. Supp. 667, affirmed with no opinion 178 N. Y. 636, 71 N. E. 1133. In Lawson v. Lincoln, supra, which was a taxpayer's action, Mr. Justice Williams, of the Appellate Division, writing for a unanimous court, after stating that the only claim there made was with respect to the illegality of official acts, said:

"The objections raised are merely technical, that the law has not been strictly complied with in every step taken by the board of education. Under such circumstances, a court of equity will not struggle to find a way to set aside what has been done, and to enjoin the continuance and completion of the project of furnishing the school district with a new and needed school building."

These observations are applicable to the case at bar, and the justification, if any there be, for bringing it, must be found, not in the merits, from the standpoint of a taxpayer, of the objections to the particular things of which complaint has been made, but in the manner in which the city is pressing its campaign of business rivalry against the plaintiff.

[2] It was shown that the board of water commissioners used material which they had on hand in making some private water connections free of charge, and furnished the labor incident thereto at the expense of the city. The value of the material and the cost of the labor was only $34.50. That work was done on account of the competition between the city and the plaintiff, and to secure as customers for the city those for whom the connections were made. It was not shown that this was in violation of any statute. It was, however, a departure from the usual custom, and a violation of a rule of the department requiring that a small fixed charge be made for each connection. It is also claimed that this constituted a discrimination against other customers of the city, who were required to pay for like connections and tapping charges. The customers who thus obtained such an advantage owed it to the fact that they were in the zone of com-

petition between the city and the plaintiff, and not to an intention on the part of the city officials to show favoritism.

A main of sufficient capacity to supply the needs of the property on both sides of Ninth street had been laid on the east side of the street, evidently with a view to having service connections for the other side, the land there being then vacant, run across the street. This eliminated the possibility of the settlement of the pavement over a trench for the water main in the middle of the street. The plaintiff laid a main on the other side of the street. The street was about to be ordered paved, and pursuant to the requirements of section 220 of the charter the common council directed that notice be served on the owners of property fronting on the street to secure connections with the sewer, water, and gas mains in front of their respective lots, "to be made and extended to the curb lines." Said section of the charter provided, also, that if the owner defaulted in complying with such notice, the work might be done and the cost and expense thereof be assessed on his property. It was manifest that it would be less expensive for the property owners on the west side of the street to connect with the plaintiff's main, and in order that the city might supply water to those vacant premises, when improved, the board of water commissioners thereupon, at the public expense, laid a main on the west side of the street.

Counsel for the plaintiff contends that since the statute, to which reference has been made, requires that in such case the service connections shall be made by or at the expense of the property owner, this additional main in effect constituted service connections, the expense of which should have been borne by the property owners. I do not agree with that contention, and am of the opinion that the board of water commissioners were vested with discretion with respect to whether the main should be laid in the middle of the street, or on one side of the street only, with service connections crossing the street, or on each side, so that the pavement might not be disturbed, and that, where such discretion is exercised without fraud or corruption, which is the case here, it is not subject to judicial review. The same claim is made with respect to this improvement at the public expense being discriminatory as is made with respect to the private connections which I have already considered, and therefore I need not further discuss that point.

[3] The other complaints are that contracts were made when there was a deficit in the funds of the board of water commissioners. This contention is largely predicated on a claim which, I think, is erroneous, to the effect that section 181 of the charter is applicable to and governs the board of water commissioners with respect to the letting of contracts. Although the statutory law relating to the board of water commissioners constitutes article 17 of the charter, as amended by chapter 145 of the Laws of 1908, embracing sections 590 to 605, inclusive, it had its origin in said chapter 145 of the Laws of 1908, after the charter had been in force for many years. It was intended to be, and is, I think, for the most part, a separate board, empowered with practically exclusive jurisdiction with respect to matters pertaining to

the water supply. The supervision, management, and control of the waterworks under the charter was formerly vested in the board of public works, but was transferred to the board of water commissioners by section 605 of the charter, being chapter 145 of the Laws of 1908. These views are strengthened by the fact that under section 606 of the charter, added by said chapter 145 of the Laws of 1908, the Legislature repealed certain sections of the act incorporating the city which related to the waterworks, and also expressly provided that:

"All other parts of said act inconsistent with or conflicting with or repugnant to the provisions of this article are hereby repealed." ·

It thus appears that section 181 of the charter was enacted before the board of water commissioners was created, and manifestly could not at that time apply thereto. By section 180 of the charter a board of estimate and apportionment was created, and it is provided therein that on or before the 1st of April in each year—

"all heads of departments and officers empowered by this act or by the city ordinance to control or authorize expenditures shall furnish to the mayor estimates in writing of the amount of the expenditures for the next fiscal year in their respective departments or offices, including a statement of the salaries of all their officers and other employés, which estimates the mayor shall lay before the board of estimate and apportionment at its first meeting thereafter."

It is further therein provided that on or before the 1st of June of each year the board of estimate and apportionment shall make an estimate of the several sums of money which they deem necessary to raise by tax to pay the expenses of conducting the business of the city in each department and office thereof, "and for the various purposes contemplated by this act, and otherwise by law for the next fiscal year and also to pay the principal and interest of any city indebtedness falling due during said year," and shall submit the same in writing to the common council, and when adopted by the common council the several sums shall be and become appropriated for the several departments and offices and purposes named in the estimate for the ensuing fiscal year. That section further provides that the board of estimate and apportionment shall also estimate the probable revenues, other than general taxes, "available for the purposes named in said estimates, other than the amounts thereof which have been otherwise appropriated by law or which may be otherwise appropriated under the provisions of this act, and direct that the same may be credited to such of the said several funds as it may determine," and that the balance, after such deductions, should be levied, assessed, and raised by tax. Section 181, in so far as material to the question presented for decision, provides that:

"The several officers, boards and departments of the city shall be governed by the said estimate and apportionment and shall not incur any debts, expenses or liabilities, either in excess or independent of the several sums respectively allotted to them. * * * It shall not be lawful for the city or any officer, board or department thereof, to expend or contract to be expended, or to incur any liability in the current fiscal year, for a greater sum than is so estimated for such officer, board or department, and so provided for by the common council in a tax levy of such year as aforesaid. * * * It shall not be

lawful for any officer, board or department of the city to make or enter into any contract for work, labor or services, or the hiring of employés, or for the purchase of any supplies, materials or apparatus, or the making of improvements or repairs, which by the terms of such contract involves an expenditure of money or liability therefor, which after taking into account the expenditures and liabilities already made or incurred, shall be in excess of the amount which has been estimated and allowed by the common council to such officer, board or department of the city in the annual estimate of the moneys necessary to be raised in said city by tax or otherwise for the current fiscal year in which said contract shall be made, excepting for the making of public improvements for which bonds or paving warrants are authorized to be issued to provide for the payment thereof. Any contract, verbal or written, made in violation of this section shall be null and void as to the city, and no moneys belonging to the city shall be paid thereon."

By section 591 of the charter the board of water commissioners is authorized to improve, enlarge, extend, and repair the waterworks plant and system, and, if sufficient funds shall not be available therefor, to issue bonds when authorized by the board of estimate and apportionment and by the common council and to prescribe water rates and to require cash deposits to insure their payment; and section 597 provides that:

"All moneys received for water rates and from the sale of bonds authorized by this article" relating to the board of water commissioners "shall be placed by the city treasurer to the credit of the water fund, and shall only be used for the purposes provided for in this article."

By virtue of the provisions of said section 597 warrants on the water fund are required to be drawn by order of the common council and signed by the city clerk and countersigned by the mayor; and by section 598 it was provided that on the last day of November and of May in each year the board of water commissioners should deliver to the city treasurer a certified list of all water rates due for the ensuing six months, and a discount of 10 per cent. was prescribed, if paid within ten days. Section 601 requires the board of water commissioners to report at the regular meeting of the common council in the months of January and July, and at such other times as the common council shall require, a statement of the receipts connected therewith for the preceding six months. Section 602 makes it the mandatory duty of the board of estimate and apportionment and of the common council to include in the annual budget and tax levy a sum of moneys sufficient to pay the rents fixed and established by the board of water commissioners for water supply for the city for fire hydrant and other public purposes, and requires that the common council shall on or before the 1st day of February in each year cause such amount to be transferred to the water fund. The provisions of section 603, I think, clearly indicate that section 181 is only applicable to the board of water commissioners to the extent of requiring the board of estimate and apportionment and common council to raise money to pay rent for water furnished to the city, and to raise any additional amount required by the board of water commissioners pursuant to section 603. Section 603 provides that all charges, expenses, indebtedness, and obligations incurred under the provisions of the article relating to the board of water commissioners shall be a charge upon

and against the city, and together with the principal and interest of outstanding water bonds shall be paid from the water fund, and further provides as follows:

"It shall be the duty of the board of water commissioners on or before the first day of April in each year to estimate the probable revenues to be derived from the city water works and the charges and expenses to be paid therefrom during the next fiscal year, and if it shall appear that such revenues will not be sufficient to pay such charges and expenses, it shall make an estimate of the deficiency, in writing, and present the same to the board of estimate and apportionment and it shall be the duty of the board of estimate and apportionment and common council to include the amount thereof in the tax budget for such year, and to levy, assess and collect the same in the manner and form provided in said act for the levy and collection of other city taxes."

It is manifest from these provisions, I think, that the Legislature contemplated that the board of water commissioners, in exercising the powers conferred upon them with respect to making contracts for extensions, improvements, or repairs, should take into consideration the moneys which it was expected would be received by the water fund on account of water rates during the fiscal year. In other words, the board was to start the fiscal year with the appropriation made by the board of estimate and apportionment and the common council for rents for water furnished the city and such further appropriation, if any, as was requested pursuant to the provisions of section 603, already quoted, with the additions thereto from time to time as water rates were collected. It may be that the powers of the board of water commissioners to contract should have been further restricted, but I am of the opinion that they are not subject to the restrictions contained in section 181 with respect to making contracts, for manifestly those provisions are wholly inapplicable, and they relate to contracts for disbursements from the funds raised by general taxation.

[4] One of the grounds of complaint is that the common council at its last session in the month of December, 1912, authorized the transfer to the water fund of the amount raised by general taxation for that fund on account of water rents for water furnished to the city, instead of waiting until some day in January thereafter, as literally contemplated by the provisions of section 602. This was done because money was due and payable in New York on the 1st day af January for interest on bonds, and to avoid a special meeting of the common council on that day. The criticisms with respect thereto are answered by the remarks of the court in Lawson v Lincoln, supra. At the time of making the contracts of which plaintiff complains, it was somewhat problematical as to what would be the condition of the water fund when the work was performed, and the making of the contracts at that time, therefore, although not constituting illegal acts, involved uncertainty, if not risk, with respect to the time of payment, which perhaps could be remedied by a more scientific method of keeping the accounts, as advocated by the accountant employed by the plaintiff. But the statute does not prescribe the method of bookkeeping to be employed, and this is not a subject for judicial review.

There is no conflict in the evidence in this case, and I have requested counsel to submit requests to find covering every proposition of fact ·

which either side claims to be material, to the end that a review may be had on the judgment roll without a case. On the proposed supplemental findings on which I have ruled, involving as they do various combinations of figures, there may be some inconsistencies, but there should be none requiring a case to review the questions decided.

These views require that the complaint should be dismissed, with one bill of costs to the city officials, including the members of the common council and of the board of estimate and apportionment, and a separate bill of costs to the contractors separately appearing.